**William Lyle BOYLE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21687.**

United States Court of Appeals
Ninth Circuit.

May 17, 1968.

Rehearing Denied Oct. 10, 1968.

---

Minoru Inadomi (argued), of Inadomi, Menke & Keenan, Santa Ana, Cal., for appellant.

Jo Ann Dunne (argued), Asst. U. S. Atty., William M. Byrne, Jr., U. S. Atty., Michael D. Nasatir, Asst. U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Div., Michael P. Balaban, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before ELY and CARTER, Circuit Judges, and CARR, District Judge.

ELY, Circuit Judge:

In an indictment containing four counts, appellant was charged with having willfully filed false federal income tax returns for the years 1959 and 1960 and with having filed false amended returns for the same years. 26 U.S.C. § 7206(1). In a jury trial, he was found guilty of all four offenses with which he was charged. His motion for new trial was denied, and he appeals.

The appellant does not claim that the evidence was insufficient to support conviction. He bases his appeal on two grounds: (1) That certain evidence was illegally seized and for that reason should not have been admitted against him and (2) that testimony of certain oral statements made by him to investigating officers should have been barred because of the failure of the officers to give him required warnings.

Appellant occupied the position of manager of the Midway City (California) Sanitation District. One Edwin L. Bark-

ley had performed services for the District. Barkley conducted his business through Barkley Pipeline Company and Mesa Pipe Line and Supply, Inc., and authorities believed that Barkley, by falsifying billing records and accounts, had overcharged the Sanitation District for the services which Barkley's business concerns had rendered. The investigating authorities, state officers representing the District Attorney of Orange County, California, procured three search warrants. They authorized searches to be made of premises which were owned and controlled by Barkley. The appellant did not occupy such premises and had no interest in them. Under the authority of the warrants, claimed by appellant to have been defective, there was a seizure of certain canceled checks. Although the record is not entirely clear, at least some of these checks were offered into evidence by the Government and received over appellant's objection. Three of them, the Government's Exhibits 9, 10, and 11, were drawn on the account of "Barkley Pipeline Construction, Incorporated, Edwin L. Barkley," and were payable to the appellant as a "Licensed Land Surveyor." Two of the three were dated in January 1960 and the other in December 1959. The appellant had not worked as a surveyor since 1952. Through the testimony of the operations officer of a certain bank, the Government proved that Barkley had purchased eight cashier's checks in 1959 and 1960, one payable to "W. Lyle Boyle," another to "W. Lyle Boyle, Surveyor," another to "Boyle Surveying," a fourth to "Boyle Survey," and the remaining four to "Boyle Survey Service." They ranged in amounts from $211 to $2,000. Appellant had submitted no bills for services, but Barkley had instructed his own bookkeeper to charge the amounts of the checks to a bidding and estimating expense account. The prosecution's case rested essentially upon appellant's failure to have reported, as income, $9,975.-47 which he received from Barkley in 1959 and $9,472.07 which he received from Barkley in 1960.

Two of the District Attorney's representatives, following up their suspicion of theft by Barkley, visited the appellant at his place of employment in October 1961. During the interview, which occurred in the room of the Board of Directors of the Sanitation District, the appellant stated, in effect, that he was reasonably certain that he had declared the payments from Barkley in his federal income tax returns, but had probably forgotten to report them in his California state income tax returns. Testimony that he had so stated was admitted, over objection, as impeachment of appellant's trial testimony that the payments from Barkley represented loans and not income.

Before he was indicted by the federal grand jury, appellant, along with Barkley, had been charged and tried in a criminal action in the California courts. In that action, appellant's motion to suppress the documentary evidence which had been seized by the state officers pursuant to the search warrants was granted by the state court, and the state charges against him were dismissed.

On the first issue before us, we hold that the District Court properly received the incriminating canceled checks into evidence. That the state court suppressed the evidence is not controlling.

"In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."

Elkins v. United States, 364 U.S. 206, 223–224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960). Our "independent inquiry" terminates with the answer to a preliminary question, whether or not the appellant was, under Fed.R.Crim.P. 41(e), a "person aggrieved" so that he had the

**416**

necessary standing to present his motions to suppress. "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, *as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else*." Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960) (emphasis added). Here, it is very clear that the search and seizure were directed at Barkley, "someone else," and not at appellant. The premises which were searched were controlled by Barkley, and no right of privacy guaranteed to appellant was infringed by the intrusion. The appellant's counsel, with commendable ingenuity, attempts to endow appellant with standing by contending that appellant, as payee, had a proprietary interest in the checks which he had endorsed and cashed. Conceding that he may have had a proprietary interest in the beginning, the checks, once paid and canceled, became nothing more than records belonging exclusively to the maker to whom they had been returned. See Hill v. United States, 374 F.2d 871 (9th Cir.), cert. denied, 389 U.S. 842, 88 S.Ct. 83, 19 L.Ed.2d 107 (1967).

■ We also reject appellant's argument that the testimony of his oral declarations to the investigating officers should have been excluded upon the authority of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The appellant concedes that Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), decided after the commencement of his trial, is inapplicable. In *Escobedo*, the accused was denied his requested access to counsel. Here, there is no evidence that appellant did, at any time during his interview with the officers, request permission to consult with counsel. Moreover, it is not clear that the suspicion of the officers had "focused" upon the appellant when he made the state-

ment in question. There is justification for the implied determination that it was the conduct of Barkley alone which was under investigation at the time and that the suspicion of the officers was focused solely upon him. Finally, the principle of *Escobedo* applies to the benefit of one who "has been taken into police custody." 378 U.S. at 490–491, 84 S.Ct. at 1765. It is true that in *Miranda* the concept of custody was expanded so as to embrace situations wherein the movement of a suspect is restricted in a significant way by the presence of civil authority. 384 U.S. at 444, 86 S.Ct. 1602. Here, however, there is absolutely no indication that the appellant's freedom of movement, at the time of the interview, was restricted in any manner whatsoever.

Affirmed.