W. LYLE BOYLE, ET AL, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Boyle v. Commissioner
Docket Nos. 5845-70, 5846-70, 5847-70.
United States Tax Court
T.C. Memo 1975-307; 1975 Tax Ct. Memo LEXIS 70; 34 T.C.M. (CCH) 1338; T.C.M. (RIA) 750307; October 6, 1975, Filed W. Lyle Boyle, pro se. Charles W. Jeglikowski and Alan D. Hill, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax Petitioner
Docket No.
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6653(b)
W. Lyle Boyle
5845-70
1955
$ 477.80
$21.65 $0 $ 0
1956
668.59
65.86
33.43
0
1957
646.61
0
0
323.31
1957 *
0
69.25
32.33
0
Geraldine Boyle
5846-70
1955
370.71
0
0
0
1956
559.08
38.48
27.95
0
1957
476.09
26.62
23.80
0
W. Lyle Boyle &
Geraldine Boyle
5847-70
1958
2,084.12
0
0
1,042.06
1959
3,484.87
0
0
1,742.44
*71 The issues for decision are: (1) Whether petitioners have the necessary standing to object under the fourth amendment to the United States Constitution in this proceeding to the admission in evidence of records of third parties illegally seized by state officials; (2) Whether petitioners failed to file Federal income tax returns for the years 1955, 1956 and 1957; (3) Whether W. Lyle Boyle received unreported taxable income in 1957, 1958 and 1959 from Edwin L. Barkley; (4) Whether W. Lyle Boyle failed to report income from surveying fees of $200 per year for the taxable years 1955 through 1959; (5) Whether amounts were received from Midway City *72 Sanitary District in 1957 through 1959 and if such amounts were received whether they constitute rental receipts for trucks and equipment or reimbursements for business expenses incurred personally by petitioner; (6) Whether petitioners received and failed to report certain rental income from real property; (7) The amount of gain from the sale of certain tools and equipment to Midway City Sanitary District by petitioner in 1959; (8) Whether W. Lyle Boyle's failure to admit the receipt of taxable income in 1957 and the failure of both petitioners to report taxable income on their joint tax returns for 1958 and 1959 was due to fraud with intent to evade tax under section 6653(b); (9) Whether petitioners are entitled to itemized deductions in excess of the deductions allowed by the Commissioner for the taxable years 1955 through 1959; and (10) Whether petitioners are liable for additions to the tax as set forth in the preceding schedule. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, supplemental stipulation of facts and exhibits are incorporated by this reference. W. Lyle and Geraldine Boyle, husband and wife, resided in Santa Ana, *73 California, at the time their petitions were filed. The activities of W. Lyle Boyle give rise to the adjustments to the income tax returns; therefore, he shall be referred to as petitioner. Petitioner and Mrs. Boyle did not file individual or joint Federal income tax returns for the taxable years 1955, 1956 and 1957. Accordingly, the Commissioner computed the taxable income and tax thereon for the taxable years 1955, 1956 and 1957 as follows: 1955
1956
1957
W. Lyle
Geraldine
W. Lyle
Geraldine
W. Lyle
Geraldine
Boyle
Boyle
Boyle
Boyle
Boyle
Boyle
COMMUNITY INCOME
Wages: Boyle Engineering
$ 7,697.00
$ $ 4,522.65 $
$ $
Midway City Sanitary
District
5,101.50
7,200.00
Fees for Surveying Jobs
200.00
200.00
200.00
Fees from Edwin L. Barkley
1,665.00
Truck and Equipment Rents from
Midway City Sanitary Dist.--
1957 only-- $1,200
Less: Depreciation 75
1,125.00
TOTAL COMMUNITY INCOME
$ 7,897.00
$ 9,824.15
$10,190.00
Less: One-Half to Spouse
(3,948.50)
3,948.50
(4,912.08)
4,912.08
(5,095.00)
5,095.00
SEPARATE PROPERTY INCOME
Gross Rental Income from
Paul Meredith
144.00
144.00
144.00
Less: Depreciation
(33.00)
(33.00)
(33.00)
ADJUSTED GROSS INCOME
Less: Standard Deduction
(394.85)
(405.95)
(491.21)
(500.00)
Itemized Deductions
(1,060.14)
(1,060.14)
Exemptions
(1,200.00)
(1,800.00)
(1,200.00)
(1,800.00)
(1,200.00)
(1,800.00)
TAXABLE INCOME
$ 2,353.65
$ 1,853.55
$ 3,220.86
$ 2,723.08
$ 2,834.86
$ 2,345.86
TAX DUE
$ 477.80
$ 370.71
$ 668.59
$ 559.08
$ 646.61
$ 476.09
*74 The Commissioner allowed petitioner and Mrs. Boyle the standard deduction for 1955 and 1956. The itemized deductions claimed by them for 1955, 1956 and 1957 and the amounts determined by the Commissioner for 1957 are as follows: 1955
1956
1957
Claimed by
Claimed by
Allowed by
Claimed by
Petitioner
Petitioner
Commissioner
Petitioner
CONTRIBUTIONS
$ 50.00
$ 70.00
$ 30.00
$ 30.00
INTEREST EXPENSES: Freeman Street real prop. - Coast Fed. Savings
947.55
899.03
791.93
217.92
1957 Ford station wagon - Pacific Finance
160.00
160.00
17th Street real property - First Western Bank
0
0
319.68
0
Second Trust Deed - Mr. Hanna
140.00
200.00
0
0
Seaboard Finance
216.00
126.00
0
0
Household Finance
0
96.00
0
108.00
Dunham Loan
0
0
0
1,523.34
Interest on escrow
0
0
0
45.98
TAXES: Real Property - Freeman Street
419.99
415.98
438.68
438.66
Sales - auto
0
0
120.00
146.88
Sales - other
105.00
138.00
125.00
116.00
Unsecured Personal Property Tax
13.00
13.05
0
0
Tract No. 298 real property
0
0
0
0
MISCELLANEOUS: Auto license
25.00
50.00
42.00
80.00
Gasoline tax
70.00
60.00
45.00
53.00
Surveyors license
4.00
4.00
6.00
6.00
1/2 basic telephone
0
0
42.00
0
UNREIMBURSED EXPENSES FROM JOB AT MIDWAY
Telephone
0
55.00
0
84.00
Buick Auto
0
768.00
0
0
1/2-ton pickup
0
384.00
0
1,440.00
1957 station wagon
0
0
0
500.00
Less: reimbursement for tools & equipment
(1,200.00)
TOTAL COMMUNITY ITEMIZED DEDUCTIONS
$1,990.54
$3,259.06
$2,120.29
$ 3,762.83
THEFT FROM AUTO:
$ 511.00
*75 Petitioner and Geraldine Boyle filed joint Federal income tax returns for the taxable years 1958 and 1959 and an amended return for 1959, all with the District Director of Internal Revenue, Los Angeles, California. The income reported by petitioner and determined by the Commissioner and the itemized deductions claimed by petitioner and allowed by the Commissioner for 1958 and 1959 are as follows: INCOME
1958
1959
Determined
Reported
Determined
Reported
by Commr.
by Petr.
by Commr.
by Petr.
COMMUNITY WAGES - Midway
$ 7,250.00
$7,250.00
$10,154.60
$10,154.60
UNREPORTED COMMUNITY INCOME: Fees from Edwin L. Barkley and/or
Barkley Pipeline Construction, Inc.
7,992.00
0
10,725.47
0
Truck & equipment rent from Midway: 1958
1959
Gross receipts
$1,200
$500.00
Less: Depreciation
75
31.25
1,125.00
0
468.75
0
Fees for surveying jobs
200.00
0
200.00
0
Vacation pay
0
0
700.00
0
Capital Gain income from sale of tools
& equipment to Midway: Resp.
Petr.
Sales price
$2,558.00
$2,558.00
Less: Cost basis
119.25
4,274.00
Gain (loss) realized
2,438.75
(1,716.00)
Less: 1202 deduction
1,219.38
0
0
0
1,219.38
0
TOTAL COMMUNITY INCOME
$16,567.00
$7,250.00
$23,468.20
$10,154.60
SEPARATE PROPERTY INCOME OF
GERALDINE BOYLE: Gross rents from Paul Meredith:
$144.00
Less: Depreciation
33.00
$ 111.00 $0
$ 111,00 $0
DEDUCTIONS
Allowed by
Claimed by
Allowed by
Claimed by
Commr.
Petr.
Commr.
Petr.
CHARITABLE CONTRIBUTIONS
$ 30.00
$ 100.00
$ 100.00
$ 100.00
INTEREST EXPENSE: Dunham Loan
0
1,612.20
0
2,031.12
Household Finance
0
49.00
0
0
Pacific Finance (1959 Galaxie)
0
203.72
251.79
465.34
Pacific Finance (1957 station wagon)
110.00
0
127.72
0
17th Street - First Western Bank
322.23
0
292.80
0
Freemen Street - Coast Federal
810.50
0
787.24
0
TAXES: Freeman Street real property - Lot 14,
Tract 1228
428.62
428.62
438.04
438.04
Tract No. 298 real property
0
114.39
0
60.68
Unsecured personal property
0
13.35
0
41.22
State franchise
0
12.00
0
0
Gasoline
45.00
60.00
75.00
75.00
MISCELLANEOUS: Auto license
38.00
58.00
120.00
120.00
Surveyors license
6.00
6.00
6.00
6.00
Sales tax - Auto 1959 station wagon
0
0
140.60
140.60
- Auto 1959 Galaxie
0
0
124.76
124.76
- Other
125.00
116.00
135.38
135.38
UNREIMBURSED EXPENSES: Phone bill
42.00
84.00
42.00
84.00
1957 auto
0
792.00
0
346.50
Tool depreciation
0
400.00
0
475.00
1948 1/2-ton pickup ($1440 less
reimbursement $1200)
0
240.00
0
0
Misc. tool expense
0
0
0
75.00
TOTAL DEDUCTIONS
$ 1,957.35
$4,289.28
$ 2,641.33
$ 4,718.64
*76 Petitioner was born on September 28, 1917, in Lyons, Kansas. He graduated from Santa Ana High School, Santa Ana, California, and later attended junior college for about one year. Petitioner is a surveyor, licensed by the State of California under number LS-2425 in 1947. He owned and operated an engineering, surveying and general contracting business some time prior to 1957. Petitioner was employed by Boyle Engineering, Santa Ana, California, during 1955 and part of 1956. Boyle Engineering was owned by petitioner's brother. During 1957, petitioner accepted a position with the Midway City Sanitary District (Midway), a political subdivision of Orange County, California, and worked there continuously until 1962. During the years 1957, 1958 and 1959, Mr. Edwin L. Barkley performed services for Midway. Petitioner rendered engineering advice to Mr. Barkley on several occasions. On October 9, 1961, January 18, 1962, and January 31, 1962, search warrants were issued out of the Municipal Court of Huntington Beach-Seal Beach, California, judicial district for books, records and documents of Edwin L. Barkley. Pursuant to the search warrants, books, records and documents belonging to Barkley *77 were seized by the District Attorney of Orange County, California. Petitioner and Mr. Barkley were indicted in a state court action and on January 16, 1963, the Superior Court of the State of California for the County of Orange sustained an objection to the introduction of the books, records and documents of Edwin L. Barkley on the grounds that they had been illegally seized. As a result, the indictment was dismissed. On January 15, 1963, petitioner's attorney in his opening statement before the Superior Court stated: It started when Mr. Boyle was a surveyor and wasn't an engineer, and he wasn't working at that time for MCSD. He went to work for them on a parttime basis. He was also working for the Boyle Engineering Company, which is owned by his brother, Lester Boyle. In 1957 he had met Mr. Barkley--before 1957--but in the latter part of 1957 he was retained by Mr. Barkley on a consulting basis to render service to Mr. Barkley of the Barkley Pipe Line Company for the purpose of estimating and giving him engineering advice, and also to find him extra work--which is the right of every man that is engaged in business--and also entered into an arrangement with him that where it was *78 necessary for Mr. Boyle to enter into any special work that he would be paid extra for it. On March 16, 1966, Petitioner was indicted and charged with violation of section 7206(1) [3] of the Internal Revenue Code of 1954. It was alleged that petitioner willfully subscribed a false joint Federal income tax return and amended return for 1959 wherein he stated that the gross income of himself and his wife for the calendar year 1959 was $10,154.50 when he knew that they had received additional income in form of fees from Edwin L. Barkley and Barkley Pipeline Construction, Inc., amounting to $9,975.47. On April 4, 1966, petitioner entered a plea of not guilty to the charges and, on May 24, 1966, after a jury trial, a verdict of guilty was entered on all counts charged. On July 11, 1966, judgment was entered and *79 petitioner's appeal was affirmed. Boyle v. United States,395 F.2d 413 (9th Cir. 1968), cert. denied 393 U.S. 1089 (1969). On October 14, 1969, the judgment against petitioner was modified and became final. Prior to the filing of criminal charges by the State of California, petitioner was interviewed by a Mr. Helsing who was a deputy district attorney of Orange County. On October 11, 1961, Mr. Helsing examined the records of Edwin L. Barkley, Edwin L. Barkley's sole proprietorship and Barkley Pipeline Construction, Inc. The cash disbursement records of Edwin L. Barkley reflected the following: DATE
PAID TO
AMOUNT
CHARGED TO
1957
9/5
Cash - Boyle
$ 200.00
Estimating & Bidding
10/9
Boyle Engr.
250.00
Estimating & Bidding
11/8
Boyle Engr.
375.00
Estimating & Bidding
11/25
Boyle Engr.
75.00
Estimating & Bidding
12/2
Boyle Engr.
150.00
Estimating & Bidding
12/6
Boyle Engr.
615.00
Estimating & Bidding
12/31
Boyle Engr. Plan Dep.
5.00
Estimating & Bidding
TOTAL
$1,670.00
1958
1/6
Boyle Engr.
$ 325.00
Estimating & Bidding
1/18 (12/31/57)
Boyle Engr. Refund
5.00
Estimating & Bidding
2/18
Cash - Engr. Exp.
275.00
Estimating & Bidding
2/26
Boyle Engr.
100.00
Estimating & Bidding
3/7
Boyle Engr.
650.00
Estimating & Bidding
4/4
Boyle Engr.
600.00
Estimating & Bidding
5/2
Engineering - Boyle
652.00
Estimating & Bidding
5/26
Cash - Boyle Engr.
100.00
Estimating & Bidding
6/6
Cash Boyle
620.00
Estimating & Bidding
6/17
Boyle Engr. - dep.
25.00
Estimating & Bidding
6/30
Boyle Engr. - dep. rt.
25.00
Estimating & Bidding
7/6
Boyle Engr.
820.00
Estimating & Bidding
8/12
Cash - Boyle
700.00
Estimating & Bidding
9/5
Boyle - Engr.
700.00
Estimating & Bidding
10/3
Boyle Engr.
800.00
Estimating & Bidding
11/7
Boyle Engr.
750.00
Estimating & Bidding
12/10
Boyle Engr.
850.00
Estimating & Bidding
12/29
Cash (endorsed by
Estimating & Bidding
W. Lyle Boyle)
50.00
unknown
TOTAL
$8,047.00
1959
1/9
Boyle Engr.
$ 750.00
Estimating & Bidding
1/14
Boyle Engr.
6.60
Estimating & Bidding
TOTAL
$ 756.60
*80 The following cashier's checks were purchased by Edwin L. Barkley during 1959: Date
Check No.
Payee
Amount
8/7/59
5178599
Boyle Surveying
$1,500.00
9/4/59
5178872
W. Lyle Boyle, Surveyor
1,997.00
10/2/59
5170131
W. Lyle Boyle
2,000.00
11/6/59
5170465
Boyle Surveying Service
1,982.47
$7,479.47 The cash disbursement records and available cancelled checks of Barkley Pipeline Construction, Inc., reflected the following items charged to "Estimating and Bidding": Date
Check No.
Payee
Amount
11/ 6/59
5170465
Boyle Surveying Service
$1,982.47
12/17/59
346
W. Lyle Boyle Licensed
Land Surveyor L.S. 2425
2,496.00
TOTAL for 1959
$4,478.47
1/12/60
564
Boyle Surveying Service
$2,187.62
2/11/60
688
Boyle Survey Service
2,383.00
4/19/60
1031
Boyle Survey Service
1,534.45
TOTAL for 1960
$6,105.07
Mr. Helsing found no evidence in the books and records that petitioner made any payments to either Mr. Barkley or to his Pipeline Construction company. The original books and records of Edwin L. Barkley were destroyed by natural causes. The books and records which Mr. Helsing examined were *81 the same records the California Superior Court determined to be illegally seized. Another member of the office of the District Attorney for Orange County, Mr. Gier, examined the books and records of Mr. Barkley while on his premises prior to the illegal seizure. He first saw the check dated December 17, 1959, numbered 346, made to the order of W. Lyle Boyle licensed land surveyor L.S. 2425 after the seizure of the records. In an interview with Mr. Gier on November 28, 1961, petitioner informed him that he did not know how much money he had received from Mr. Barkley and that the "first part" of the money received constituted a loan and the "second part" was reported as income on his Federal income tax return. Mr. Joel Hayes, an agent for the District Attorney's Office for Orange County, interviewed petitioner on the morning of October 11, 1961, prior to petitioner's interview with Mr. Helsing. Petitioner admitted to Hayes that he had done about $1,500 of survey work for Barkley Pipeline Construction, Inc. Hayes thereupon confronted petitioner with the fact that he had five cashiers' checks for approximately $2,000 each payable to Mr. Boyle or Boyle Surveying, whereupon petitioner *82 recalled that he possibly had done further work for Barkley. In a subsequent interview, in the afternoon of October 11, 1961, petitioner related to Hayes that he had approached Barkley to obtain a $12,000 loan and, of the $6,000 received from Barkley, he had repaid $700 or $800 and intended to repay all but $2,000 or $3,000 which he felt he had earned by advising Barkley on various engineering and surveying problems. A Mr. Foley interviewed petitioner on March 19, 1964, and after identifying himself as a special agent with the intelligence division of the Internal Revenue Service, he advised petitioner of his constitutional rights. Petitioner admitted to Agent Foley that he received $200 per year for drafting and survey work on the side. J. R. Lester Boyle, petitioner's brother and chairman of the board and president of Boyle Engineering for the years in question, was requested by the Internal Revenue Service to search the records of Boyle Engineering for 1957, 1958 and 1959 to determine if any payments were received by Boyle Engineering from Edwin L. Barkley or Barkley Pipeline Construction, Inc. Other than nominal amounts, the records of Boyle Engineering reflected no payments *83 from Barkley. Petitioner was employed by Boyle Engineering until the latter part of 1956. On May 11, 1959, petitioner received a check from Midway in the amount of $3,258 consisting of $700 attributable to vacation pay and $2,558 as payment for various tools and equipment sold by petitioner to Midway. Petitioner's withholding tax statement (form W-2) from Midway for the taxable year 1959 did not include the $700 vacation pay in the amount designated as "total wages paid." Midway's compensation record did not disclose petitioner's receipt of the $700 vacation pay. In preparing the joint Federal income tax return for 1959, petitioner relied on his withholding tax statement for 1959 as being a true representation of wages earned from Midway. The items purchased by Midway, as reflected in Midway's board of directors minutes for May 7, 1959, and petitioner's claimed cost basis and the year of purchase of each item as follows: ITEM
YEAR PURCHASED
COST
1948 1/2-ton pickup truck
1953
$1,200
Utility bed for pickup truck
1958
895
Rebuilt motor for pickup truck
1958
246
I.B.M. Electric typewriter
727
Electric drill
1958
155
Tape recorder
1957
139
Mechanical typewriter
1957
175
Survey Equipment purchased
over a period of years
150
Welding gauges and welding
tips
1956
300
Electric water cooler
1959
287
TOTAL ORIGINAL COSTS
$4,274
*84 The Commissioner allowed a basis of $119.25 for the assets purchased by Midway. Petitioner maintained no checking or savings accounts for the years in question. Purchases and payments of bills were handled either in cash or by the use of money orders. Mr. Boyle had difficulty in maintaining a checking account because creditors attached his bank accounts. For the same reason, he did not hold legal title to any assets. Legal title was held by his brother, Robert Boyle, who was a bank vice president. He held title to the Freeman Street property, petitioner's residence, upon which a loan through Coast Federal Savings and Loan was outstanding for the years 1955, 1956 and a portion of 1957. Other than mere title, Robert had no financial or beneficial interest in the Freeman Street property. He made no payments on the Coast Federal loan which were made, instead, by petitioner. On February 11, 1957, the Freeman Street property was conveyed from Robert Boyle to Robert Dunham as collateral and Mr. Dunham became the primary creditor secured by the Freeman Street property, replacing Coast Federal. During the refinancing, the liability to a secondary creditor, a Mr. Hanna, was satisfied from *85 the proceeds of the Dunham refinancing. On December 12, 1955, a payment of $419.99 was made respecting the Freeman Street property to the Orange County tax collector. The loan statements from Coast Federal show the account was charged with $947.55 interest for 1955 and that payments made in 1955 included $1,069.27 in interest and $136 in late payment charges. Interest charged for 1956 was $899.03 with $1,052.18 of interest paid. The loan ledger sheet also reflects that payments for real property taxes on the Freeman Street property of $419.99 and $415.98 were made in 1955 and 1956, respectively. An incomplete statement for 1957 shows that at least $804.75 interest was paid in 1957. The 1948 Ford 1/2-ton pickup which petitioner sold to Midway was registered in Robert Boyle's name but he had no financial interest in the vehicle. The sum of $22 was paid in 1956 for the licensing and registration of the 1948 pickup. Robert Boyle also held title to petitioners' furniture and two other vehicles owned by petitioner. Robert Boyle borrowed $1,540 from Seaboard Finance on June 15, 1954, which provided for 17 installment payments of $98.30 each, commencing July 20, 1954, and ending January 15, 1955. The *86 loan was secured by petitioners' furniture. Robert Boyle paid none of the installments on the loan. Robert Boyle also obtained loans secured by petitioner's 1959 Ford Galaxie automobile, title to which was in Robert Boyle's name. Petitioner purchased a 1957 Ford Country Squire automobile on February 28, 1957, which was financed by Pacific Finance and required a "time price differential" of $611.16. Installment payments of $97.81 were to commence on April 3, 1957, and continue for 36 months. Sales tax was stated to be $146.88. Numerous money order stubs reflect payments of $97.81 having been made to Pacific Finance. Two loans were obtained on July 3, 1956 and March 6, 1957, from Household Finance by Robert Boyle. The former loan was for $481.25 and required 24 monthly payments of $26 commencing August 10, 1956, with final payment due July 3, 1958. The latter loan consolidated the former and advanced an additional $429.78 making a total of $801.09 outstanding on March 6, 1957, and required 24 monthly payments of $42 commencing April 10, 1957, with final payment due March 6, 1959. The loans were repaid by petitioner. Receipts reflect that $18.31, $15.45 and $54.29 in interest was paid *87 to Household Finance in 1957, 1958 and 1959, respectively. The minutes of the board of directors of Midway for December 6, 1956, contain the following: 1. A letter was received from Boyle Engineering, Engineers for the District, enclosing a check for $511.00 payable to the District, said letter pertaining to reimbursement to the District for moneys and property of the District which had been stolen from an automobile belonging to one of the employees of Boyle Engineering on the night of July 29, 1956. Also accompanying said letter and check was a memorandum of independent audit of collections and deposits for sewer connection fees. It was called to the attention of the Board that Lyle Boyle, from whom the said funds were stolen on July 29th, had already reimbursed the District in full for this loss several months previously. * * *
The check was returned by Midway to Boyle Engineering. On the day of the theft, petitioner had collected the money on behalf of Boyle Engineering which was acting as collection agent for Midway. On June 18, 1957, Geraldine Boyle paid the Orange County tax collector $28.47 on real property tract No. 298 which was composed of $25.93 in tax, a 6 *88 percent penalty of $1.54 and costs of $1. A receipt dated June 17, 1957, records payment of $45.40 by Geraldine Boyle to the tax collector on tract No. 298. The receipt discloses $192.40 as due, previous payments of $76.96 and, of the $45.40 payment, $38.50 was considered to be tax, leaving a balance of $76.96. A certificate of redemption verifies real property taxes were timely paid on tract No. 298 for the years 1955, 1956 and 1957; the respective amounts of tax were not disclosed. Total taxes assessed for 1949 through 1954 amounted to $152.60 upon which penalties of $36.80, interest of $28.45 and a redemption fee of $3 were added. Previous payments of $139.29 were made and final payment of $81.59 on June 18, 1958, by Geraldine Boyle redeemed tract No. 298. An unsecured personal property tax of $13.78 was paid by W. Lyle Boyle on December 3, 1959. On December 4, 1959, petitioner paid an additional tax of $14.69 for the year 1959 and $13.35 for taxes due in 1958. During the years petitioner was employed at Midway, he was on call 24 hours a day to repair any emergencies which developed in the Midway sewer systems. To be available for emergency repairs, he installed a radio in his *89 car and his personal telephone was available for Midway use. Petitioner's 1/2-ton pickup was the only vehicle used at Midway during 1957. Other employees of Midway who used personal vehicles on the job received reimbursement from Midway for gas, oil and all maintenance to their vehicles. Petitioner received payments from Midway for the use of his personal equipment and his vehicle. ULTIMATE FINDINGS OF FACT 1. Petitioner received and failed to report taxable income received from Edwin L. Barkley in the amount of $1,665, $7,992 and $10,725.47 for the taxable years 1957, 1958 and 1959, respectively. 2. Petitioner received and failed to report taxable income of $200 for estimating and surveying in each of the taxable years 1955 through 1959. 3. Amounts received by petitioner from Midway City Sanitary District in 1957 through 1959 were rental income. 4. Geraldine Boyle received and failed to report net rental income of $111 in each of the taxable years 1955 through 1959. 5. Petitioner sold tools and equipment to Midway City Sanitary District in 1959 and realized net longterm capital gain of $628.99. 6. W. Lyle Boyle's failure to report income received from Edwin L. Barkley *90 for the taxable years 1957 through 1959 was due to fraud. 7. Petitioners are entitled to the following deductions: 1955
1956
1957
1958
1959
CONTRIBUTIONS
$ 30.00
$ 30.00
$ 30.00
$ 30.00
$ 100.00
INTEREST EXPENSES: Freeman Street Real Prop. - Coast Fed. Savings
1,205.27
1,052.18
804.75
0
0
1957 Ford Station Wagon - Pacific Finance
0
0
169.70
203.64
203.64
17th Street Real Property - First Western Bank
0
0
319.68
322.23
292.80
Second Trust Deed - Mr. Hanna
140.00
200.00
0
0
0
Seaboard Finance
92.52
7.71
0
0
0
Household Finance
0
29.70
95.40
103.44
54.29
Dunham Loan
0
0
1,523.34
1,612.20
2,031.12
Interest on escrow
0
0
0
0
0
1959 Ford Galaxie - Pacific Finance
0
0
0
0
261.70
TAXES: Real Property - Freeman Street
419.99
415.98
438.66
428.62
438.04
Sales - auto
0
0
146.88
0
265.36
Sales - other
105.00
125.00
125.00
125.00
135.38
Unsecured Personal Property Tax
13.05
13.05
13.05
0
41.22
Tract No. 298 real property
25.00
25.00
64.41
81.57
25.00
MISCELLANEOUS: Auto license
25.00
50.00
42.00
38.00
120.00
Gasoline Tax
0
0
45.00
45.00
75.00
Surveyors license
4.00
4.00
6.00
6.00
6.00
1/2 basic telephone
0
0
42.00
42.00
42.00
$2,059.83
$1,952.62
$3,865.87
$3,037.70
$4,091.55
*91 8. Petitioners failed to file income tax returns for the taxable years 1955, 1956 and 1957. 9. Petitioners W. Lyle and Geraldine Boyle's omissions from income for the taxable years 1956 and Petitioner Geraldine Boyle's omissions from income in 1957 were due to negligence. OPINION Petitioner urges that all evidence received in this case which was derived from Edwin L. Barkley's records illegally seized by Orange County officials should be suppressed as fruits of an illegal search under the fourth amendment. Efrain T. Suarez,58 T.C. 792 (1972). The Superior Court of the State of California held the seizure to be in violation of the safeguards accorded under California law. In Boyle v. United States,395 F.2d 413 (9th Cir. 1968), cert. denied 393 U.S. 1089 (1969), the court held that the State court determination of an illegal seizure was not binding on Federal courts and specifically held petitioner had no standing to object to the seizure of another's property. That decision has become final; thus, petitioner is collaterally estopped from raising the search and seizure issue in this Court. Estate of Millard D. Hill,59 T.C. 846, 851 (1973); *92 John W. Amos,43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965). As a further preliminary matter, petitioner's objection to Agent Foley's testimony on the contention that he failed to properly apprise petitioner of his constitutional rights is denied because we find from the record that he advised petitioner of his constitutional rights. Fraud Penalty for 1957, 1958 and 1959
The Commissioner asserts the fraud penalty against Petitioner W. Lyle Boyle for 1957 and against both petitioners for 1958 and 1959. Assessment of additional tax for 1958 and 1959 is barred except for fraud. Petitioners filed no return for 1957. Respondent relies upon W. Lyle Boyle's conviction under section 7206(1) of the Code for filing false original and amended returns for 1959; upon the omission of substantial sums of income; and upon admissions and misleading and inconsistent statements made by W. Lyle Boyle in attempting to conceal his failure to report substantial sums of income. We have carefully weighed all of the evidence and conclude that respondent has proved fraud by clear and convincing evidence. Zelma Curet Miller,51 T.C. 915 (1969). *93 Unreported Income
We have found as ultimate facts that petitioner received unreported income from Edwin L. Barkley in the taxable years 1957, 1958 and 1959 in the amounts of $1,665, $7,992 and $10,725.47, respectively. The Commissioner's determination for all three years was based upon Barkley's books identifying payments to Boyle Engineering and Lyle Boyle and cashier's checks. The books and checks support the amounts determined by the Commissioner. Petitioner contends that he should not be taxed on payments identified on Barkley's books as payments to Boyle Engineering. Petitioner's brother, Lester Boyle, testified that Boyle Engineering received only nominal amounts of income from Barkley during the years in issue. Based upon all the evidence, we conclude that the payments reflected on Barkley's books as payments to Boyle Engineering were, in fact, payments to petitioner and represented taxable income to him. Petitioner testified that he borrowed money from Barkley, but his attorney stated in another proceeding that petitioner performed services for Barkley. There was no evidence of loans from Barkley to petitioner other than petitioner's testimony. We also hold that *94 petitioner earned $200 per year from estimating and surveying services for the years 1955 through 1959 which he failed to report as income. The Commissioner determined that petitioner received rental income from Midway for the use of trucks and equipment in 1957 through 1959 in the amounts of $1,125, $1,125 and $468.75, respectively. Petitioner contends that the amounts represented reimbursements and attempted to prove his contention by showing that other employees of Midway were reimbursed for their expenses. Petitioner did not produce any witnesses from Midway who could have testified as to such a practice nor did he explain why such testimony was not offered. We can only assume that such testimony would not be favorable. Wichita Terminal Elevator Co.,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioner further contends that the reimbursements were offset by expenses incurred. The expenses would not be deductible unless petitioner showed that he incurred them as a condition of his employment. C. D. Fountain,59 T.C. 696, 708 (1973); Heidt v. Commissioner,274 F.2d 25 (7th Cir. 1959), affg. a Memorandum *95 Opinion of this Court. Moreover, petitioner failed to prove the expenses. The Commissioner is, therefore, sustained on this adjustment. However, unreimbursed telephone expense of $42 per year for 1957, 1958 and 1959 allowed by the Commissioner are allowed herein. Petitioners offered no evidence on the issue of unreported rental income from Paul Meredith. The Commissioner is, therefore, sustained. In 1959, petitioner sold tools and equipment to Midway for $2,558. The Commissioner allowed a cost basis of $119.25 with a resulting net long-term capital gain of $1,219.38. Included in the assets sold were a water cooler and a 1948 1/2-ton pickup truck. Petitioner has proved that he purchased the water cooler for $301.03 in 1958 and that the truck had an adjusted basis of $1,000. Because we cannot tell from the record the items on which the Commissioner allowed the basis of $119.25, we can allow only a basis of $1,301.03 with a net long-term capital gain resulting from the sale in the amount of $628.99. Petitioner did not contest the determination of the Commissioner that he received $700 in vacation pay from Midway in 1959. Deductions
The Commissioner allowed only the standard *96 deduction to petitioners for 1955 and 1956 and allowed itemized deductions for 1957, 1958 and 1959. Petitioners introduced evidence to support itemized deductions for all years for 1955 through 1959. We have allowed the deductions to the extent shown in our ultimate findings of fact in lieu of the allowances by the Commissioner. The deductions for 1955, 1956 and 1957 are allowable one-half to each of petitioners on their separate returns. The deductions for 1958 and 1959 are allowable in full on petitioners' joint returns for those years. In our analysis of petitioners' proof of the itemized deductions, we bore in mind that the inexactitude was one of petitioners' own making. Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930). We did not allow as deductions penalties paid for late payment of taxes. [5]
Petitioner claimed a casualty loss deduction in 1956 of $511 for money stolen from his automobile. Petitioner held the money as agent for Midway. He, therefore, lacked the necessary ownership to be allowed a deduction for its loss. J. T. Lupton,19 B.T.A. 166 (1930). Petitioner *97 reimbursed Midway for the loss but there were no facts to show the reimbursement was other than voluntary. It is, therefore, not deductible under section 162. Ralph E. Wilson,40 T.C. 543, 551 (1963). Penalties for 1955, 1956, 1957
Penalties under sections 6651(a) and 6653(a) are asserted against petitioners for their separate returns for 1955, 1956 and 1957. Because we have found that W. Lyle Boyle is liable for the fraud penalty for 1957, the other penalties for that year, pleaded in the alternative against him, cannot apply to W. Lyle Boyle. Neither of petitioners offered any explanation which would constitute reasonable cause for failure to file returns for 1955, 1956 and 1957. Petitioner W. Lyle Boyle testified that he filed returns for those years. The penalty under section 6651(a) must, therefore, be sustained, except for W. Lyle Boyle for 1957 in which we approved the fraud penalty. H. M. Waite Hardware Co.,6 B.T.A. 1300 (1927). Neither of petitioners offered any explanation as to why they omitted from their returns for 1956 and 1957 rental income from Paul Meredith and fees for estimating and surveying services of $200 per year. *98 Such omissions constitute negligence within section 6653(a) and the negligence penalty is, therefore, sustained, except for W. Lyle Boyle for 1957 in which we approved the fraud penalty. Separate Returns
Petitioner complains because the Commissioner, for the taxable years 1955, 1956 and 1957 computed the income tax of petitioners on the basis of separate returns instead of joint returns. The privilege of filing a joint return may be exercised by a husband and wife only by filing a timely return. Marko Durovic,54 T.C. 1364, 1401 (1970). Because petitioners did not file returns for 1955, 1956 and 1957, they have no right to the joint return privilege. Decision will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Geraldine Boyle, docket No. 5846-70 and W. Lyle Boyle and Geraldine Boyle, docket No. 5847-70.↩
*. Leave was granted at trial to respondent to amend his answer alleging, in the alternative, that if the Court found that W. Lyle Boyle is not liable for an addition to the tax for the taxable year 1957 under section 6653(b) of the Internal Revenue Code, All Code references are to the Internal Revenue Code of 1954 as amended.
[2]↩ that the Court find that W. Lyle Boyle be liable for additions to the tax for the taxable year 1957 under sections 6651(a) and 6653(a) of the Code in the amounts shown.
3. SEC. 7206. FRAUD AND FALSE STATEMENTS. Any person who-- (1) DECLARATION UNDER PENALTIES OF PERJURY.-- Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * *↩
5. See Lulu Lung Powell,T.C. Memo 1967-32↩