**Reversed, Rendered in part, and Remanded in part. Opinion Filed August 7, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01370-CV

## VIEWPOINT BANK, Appellant
## V.
## ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,
## Appellee

On Appeal from the 416th Judicial District Court
Collin County, Texas
Trial Court Cause No. 416-03472-2012

### OPINION
Before Justices Moseley, Francis, and Lang
Opinion by Justice Moseley

In settlement of an insurance claim, Allied Property and Casualty Insurance Company issued checks jointly payable to its insured, Optimum Deerbrook, LLC, and Optimum's mortgagee, ViewPoint Bank.[1] Without ViewPoint's endorsement or consent, Optimum deposited the checks and obtained payment. ViewPoint did not receive the proceeds of the checks. ViewPoint sued Allied and several others to obtain payment on the checks or on the underlying insurance obligation. Allied and ViewPoint filed cross-motions for summary judgment. The trial court granted Allied's motion and denied ViewPoint's. The trial court severed ViewPoint's claims against Allied from the claims against the other parties and rendered

---

[1] The checks were also payable to Optimum's adjuster, Adjuster's International. Adjusters endorsed the checks and delivered them to Optimum. For simplicity, we refer only to Optimum and ViewPoint.

a final summary judgment in favor of Allied.

We conclude Allied was not discharged from its liability on the underlying obligation or the checks and ViewPoint is entitled to summary judgment on the checks under article 3 of the UCC. We reverse the trial court's judgment, render judgment for ViewPoint, and remand this case to the trial court to determine the amount of prejudgment interest, reasonable attorney's fees, and postjudgment interest.

## BACKGROUND

The facts are undisputed. ViewPoint was a mortgage holder on Optimum's property and was a loss payee on Optimum's property insurance policy issued by Allied. The property was damaged when Hurricane Ike struck the Texas coast in 2008. Optimum submitted claims to Allied for the damage. Allied approved the claims and tendered insurance checks jointly payable to Optimum and ViewPoint. Optimum endorsed the checks and deposited them in its bank without ViewPoint's endorsement. ViewPoint did not consent to Optimum's negotiation of the checks and did not receive any of the proceeds. ViewPoint sued Allied for breach of the insurance policy and later added a claim under article 3 of the UCC to recover on the checks. *See* TEX. BUS. & COM. CODE ANN. §§ 3.101–.605 (West 2002 & Supp. 2013).

ViewPoint raises two issues on appeal: (1) the trial court erred by granting summary judgment for Allied and denying ViewPoint's motion for summary judgment; and (2) the checks were lost, destroyed, or stolen under UCC section 3.309 rendering Allied liable on the instruments.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The standards for reviewing summary judgments are well established and we follow them in reviewing this appeal. *See* TEX. R. CIV. P.

166a(c); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment standards of review). In a traditional motion for summary judgment, the party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548.

When both parties move for summary judgment, each party bears the burden of establishing it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. *Id.* The reviewing court should render the judgment the trial court should have rendered or reverse and remand if neither party has met its summary judgment burden. *Id.*; *Employers Reinsurance Corp. v. Am. Sw. Ins. Managers, Inc.*, 261 S.W.3d 432, 435–36 (Tex. App.—Dallas 2008, pet. denied).

## DISCUSSION

### A. Allied's Motion

Relying on this Court's decision in *Benchmark Bank v. State Farm Lloyds*, 893 S.W.2d 649 (Tex. App.—Dallas 1994, no writ), Allied moved for summary judgment on ViewPoint's breach of contract and UCC article 3 claims. Allied argued it satisfied its obligation under the insurance contract by making the checks payable jointly[2] to Optimum and ViewPoint and delivering them to Optimum. Allied argued an insurer discharges its obligations to pay a mortgagee when it delivers a check to the insured which is made out jointly to the insured and mortgagee, notwithstanding the mortgagee's claim that the insured wrongfully converted the

---

[2] In this opinion we use the phrase joint payee to refer to nonalternative payees on an instrument, e.g., payable to John and Mary, as opposed to alternative payees, e.g., payable to John or Mary. *See* TEX. BUS. & COM. CODE ANN. § 3.110(d) & cmt. 4.

–3–

funds. *See Benchmark*, 893 S.W.2d at 651.

The Texas Supreme Court recently addressed the *Benchmark* decision in *McAllen Hospitals, LP v. State Farm Mutual Insurance Company of Texas*, No. 12-0983, 2014 WL 1998245 (Tex. May 16, 2014). The issue in *McAllen Hospitals* was whether the hospital's statutory lien against proceeds of a personal injury settlement was paid where the settlement checks payable to the patients and the hospital jointly were delivered to the patients and the patients presented the checks for payment without the hospital's endorsement or knowledge. *McAllen Hosps.*, 2014 WL 1998245, at *2–3. The supreme court recognized the UCC applied to resolving the dispute: "Because this case involves State Farm's use of negotiable instruments to satisfy its underlying obligations, we turn to the Uniform Commercial Code (UCC), as codified in the Texas Business and Commerce Code, to evaluate the parties' dispute." *Id.* Then the court framed the issue as: "whether issuance of a draft made out jointly to two nonalternative payees, one of whom presented the draft for payment without the endorsement of the other, discharges the drawer's obligation to the payee whose endorsement was not obtained." *Id.*

> In resolving this issue, the court discussed the holding in *Benchmark*:
>
> The court of appeals [in *Benchmark*] held that (1) possession of the draft by one joint payee constitutes constructive possession by the other, and (2) Benchmark had no further recourse against the drawer after the drafts were honored and paid. As discussed below, while we agree with the court's first holding, we disagree with its conclusion that the copayee had no further recourse against the drawer.

*McAllen Hosps.*, 2014 WL 1998245, at *3.

The supreme court held delivery of a check to one of the joint payees is constructive delivery to all. *Id.*; *see also* TEX. BUS. & COM. CODE ANN. § 3.420 cmt. 1 (West 2002) ("If a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees."). However, this does not end the analysis. Under the UCC, "an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument,

–4–

and to a person entitled to enforce the instrument." *McAllen Hosps.*, 2014 WL 1998245, at \*3 (quoting TEX. BUS. & COM. CODE ANN. § 3.602(a)). When a check is payable to nonalternative joint payees, one payee "acting alone is not entitled to enforce, and thus may not discharge, the instrument." *Id.*; *see* TEX. BUS. & COM. CODE ANN. § 3.110(d) ("If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them."); *id.* § 3.301 (defining persons entitled to enforce an instrument are holders, persons with the rights of a holder, or persons entitled to enforce under section 3.309 or 3.418(d)).

Thus, one of the joint payees, "acting alone, cannot be the holder or the person entitled to enforce or negotiate the instrument because neither, acting alone, is the identified person stated in the instrument." TEX. BUS. & COM. CODE ANN. § 3.110(d) cmt. 4; *see id.* § 1.201(b)(21) (defining holder). Because a joint payee acting alone is not a person entitled to enforce the instrument, payment to that person does not discharge the obligation to pay the instrument. *See* TEX. BUS. & COM. CODE ANN. § 3.602(a); *McAllen Hosps.*, 2014 WL 1998245, at \*3–4.

The Supreme Judicial Court of Massachusetts applying these principles reached the opposite conclusion from *Benchmark*. *See McAllen Hosps.*, 2014 WL 1998245, at \*4 (discussing *Gen. Motors Acceptance Corp. v. Abington Cas. Ins. Co.*, 602 N.E.2d 1085 (Mass. 1992) (*GMAC*)). The Massachusetts court recognized that holding otherwise would result in "'no assurance that all the joint payees would receive payment'" and would dissolve any distinction between drafts made out to alternative copayees and drafts made out to nonalternative copayees." *McAllen Hosps.*, 2014 WL 1998245, at \*4 (quoting *GMAC*, 602 N.E.2d at 1088). The Texas Supreme Court adopted the approach in *GMAC* as "representative of the better view." *Id.*

Thus, the supreme court in *McAllen Hospitals* rejected *Benchmark*'s conclusion that the

–5–

non-endorsing copayee (like ViewPoint) has no further recourse against the drawer (like Allied):

> Other jurisdictions have cited *GMAC* with approval and adopted its reasoning. *See State ex rel. N.D. Housing Fin. Agency v. Ctr. Mut. Ins. Co.*, 720 N.W.2d 425, 429–30 (N.D. 2006) (holding that forged endorsement by nonalternative copayee did not discharge drawer's obligation to other copayee); *Crystaplex Plastics, Ltd. v. Redevelopment Agency of City of Barstow*, 77 Cal.App.4th 990, 92 Cal.Rptr.2d 197, 203–04 (2000) (payee could maintain cause of action against drawer under UCC after copayee cashed check with forged endorsement). We join these jurisdictions and hold that delivery of a check to one copayee constitutes constructive delivery to all. However, because payment to one nonalternative copayee without the endorsement of the other is not payment to a "holder," it does not discharge the drawer of either his liability on the instrument or his underlying obligation.

*McAllen Hosps.*, 2014 WL 1998245, at *4.

Allied relies on section 3.310(b)(1) and contends its obligation was discharged because the checks were "paid." TEX. BUS. & COM. CODE ANN. § 3.310(b)(1).[3] However, section 3.602(a) defines payment: an instrument is paid only to the extent payment is made to a person entitled to enforce the instrument. *Id.* § 3.602(a). One joint payee acting alone cannot be a holder or person entitled to enforce an instrument. *Id.* § 3.110(d); *McAllen Hosps.*, 2014 WL 1998245, at *4. "Thus, under Section 1-201(20) X or Y, acting alone, cannot be the holder or the person entitled to enforce or negotiate the instrument because neither, acting alone, is the identified person stated in the instrument." TEX. BUS. & COM. CODE ANN. § 3.110(d) cmt. 4. Therefore, the checks were not paid to a person entitled to enforce them and section 3.310(b)(1) does not discharge Allied's obligation on the checks.

We follow the supreme court's holding that, "payment of a check to one nonalternative copayee without the endorsement of the other does not constitute payment to a 'holder' and thus

---

[3] (b) . . . if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply:

(1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check.

does not discharge the drawer of either his liability on the instrument or the underlying obligation." *McAllen Hosps.*, 2014 WL 1998245, at *6.[4] Thus, payment to Optimum without ViewPoint's endorsement or consent did not discharge Allied's liability on the checks or the underlying obligation. *Id.* Accordingly, Allied was not entitled to summary judgment and the trial court erred by granting Allied's motion for summary judgment.

## B. ViewPoint's Cross-Motion

ViewPoint's cross-motion for summary judgment alleged it was entitled to judgment as a matter of law on the checks under article 3 of the UCC. ViewPoint contends it may recover on the checks even though it does not have possession of the checks.

Under section 3.310(b) if an uncertified check is taken for an obligation, the obligation is suspended until the check is dishonored, or paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check. TEX. BUS. & COM. CODE ANN. § 3.310(b)(1). If the check is dishonored and the payee has possession of the check, the payee may enforce either the check or the obligation. *Id.* § 3.310(b)(3). If the payee no longer has possession of the check because it was lost, stolen, or destroyed, the payee may not enforce the underlying obligation against the drawer to the extent of the amount of the check and the payee's rights against the drawer are limited to enforcement of the check. *Id.* § 3.310(b)(4). This case involves the last situation because ViewPoint, although it once had constructive possession, no longer has possession of the checks.

---

[4] Allied argues in a letter brief that if this Court "decides to overrule *Benchmark Bank* in light of *McAllen Hospitals*, the new rule announced in this case should apply only prospectively." We disagree. The supreme court expressly rejected the holding in *Benchmark* that the payee had no recourse against the drawer after the drafts were paid. *McAllen Hosps.*, 2014 WL 1998245, at *3, *6. A decision of the Texas Supreme Court "operates retroactively unless this Court exercises its discretion to modify that application." *Bowen v. Aetna Cas. & Sur. Co.*, 837 S.W.2d 99, 100 (Tex. 1992) (per curiam); *Bowles v. Clipp*, 920 S.W.2d 752, 759 (Tex. App.—Dallas 1996, writ denied); *Dees v. Bowles*, 907 S.W.2d 626, 627–28 (Tex. App.—Dallas 1995, no writ). Although Allied did not cite *Bowen* in its argument, that decision is clearly binding precedent on this issue. *See Dees*, 907 S.W.2d at 628 n.2. The supreme court in *McAllen Hospitals* did not indicate its holding should apply only prospectively. Accordingly, the decision in *McAllen Hospitals* applies in this case.

According to comment 4 to section 3.310, there was uncertainty under the former UCC provision regarding the case where a check was stolen from the payee, the payee's signature was forged, and the forger obtained payment. The last sentence of section 3.310(b)(4) addresses the issue:

> If the payor bank pays a person not entitled to enforce the instrument, as in the hypothetical case, the suspension of the underlying obligation continues because the check has not been paid. Section 3-602(a). The payee's cause of action is against the depositary bank or payor bank in conversion under Section 3-420 or *against the drawer under Section 3-309.*

TEX. BUS. & COM. CODE ANN. § 3.310 cmt. 4 (emphasis added).

In turn, section 3.309 provides a person who is not in possession of an instrument is entitled to enforce the instrument if:

> (1) the person seeking to enforce the instrument:
>
>> (A) was entitled to enforce the instrument when loss of possession occurred; . . .
>
> (2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and
>
> (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

TEX. BUS. & COM. CODE ANN. § 3.309(a). The person seeking to enforce the instrument must prove the terms of the instrument and the person's right to enforce the instrument. *Id.* § 3.309(b).[5] Once that proof is made, section 3.308 applies as if the person had produced the instrument. *Id.*[6] The court must also find that the person required to pay the instrument is

---

[5] *See also* TEX. BUS. & COM. CODE ANN. § 3.301 ("'Person entitled to enforce'" an instrument means . . . (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3.309.").

[6] Section 3.308 provides in part:

> (b) If the validity of signatures is admitted or proved and there is compliance with Subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to

adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. *Id.*

Allied argues ViewPoint's only remedy is a cause of action in conversion against the depository bank or the payor bank. *See* TEX. BUS. & COM. CODE ANN. § 3.420 & cmt. 1. However, the comment to section 3.310 indicates the payee also has a cause of action against drawer under section 3.309. *Id.* at § 3.309 cmt. 4. Moreover, the supreme court rejected the same argument in *McAllen Hospitals*. *McAllen Hosps.*, 2014 WL 1998245, at *5 ("While the Hospital could have attempted to pursue the payor bank for relief directly, its failure to do so does not affect State Farm's obligations under the UCC.") (footnote omitted).[7] We conclude the conversion remedy provided by section 3.420 is not exclusive under these circumstances.

Allied does not dispute that the first two parts of section 3.309(a) are satisfied. ViewPoint had constructive possession of the checks and the loss of possession was not the result of a transfer by ViewPoint or a lawful seizure. *See id.*; *McAllen Hosps.*, 2014 WL 1998245, at *3 (holding delivery to one joint payee is delivery to all). The terms of the checks are undisputed. The total amount of all the checks is $341,290.40.

Allied argues the specific requirements of section 3.309(a)(3) are not met because the checks were not lost or destroyed, and they are not in the wrongful possession of an unknown person or a person who cannot be found or served. It is undisputed the checks were processed through the banking system and are now in Allied's possession. Allied attached sworn copies of the front and back of each check to its motion for summary judgment. Thus, Allied contends section 3.309 cannot apply because the checks are in the possession of a known person. We

---

enforce the instrument under Section 3.301, unless the defendant proves a defense or claim in recoupment.

TEX. BUS. & COM. CODE ANN. § 3.308(B).

[7] *See also* TEX. BUS. & COM. CODE ANN. § 3.414 cmt. 2 (under the revised UCC, the liability of the drawer of an unaccepted draft is treated as a primary liability).

disagree.

This case is analogous to the hypothetical described in comment 4 to section 3.310, "the case in which the check given for the obligation was stolen from the payee, the payee's signature was forged, and the forger obtained payment." TEX. BUS. & COM. CODE ANN. § 3.310 cmt. 4. In that hypothetical, the forger obtained payment on the check just as Optimum did here without ViewPoint's endorsement. The difference between a forged and a missing endorsement is not significant here. *See Sw. Bank v. Info. Support Concepts, Inc.*, 85 S.W.3d 462, 465 (Tex. App.— Fort Worth 2002) (finding no relevant distinction between an instrument with a missing endorsement and one with a forged endorsement), *aff'd*, 149 S.W.3d 104 (Tex. 2004); *Longview Bank & Trust Co. v. First Nat'l Bank of Azle*, 750 S.W.2d 297, 299 (Tex. App.—Fort Worth 1988, no writ) ("The situation of paying on an instrument missing a necessary endorsement is analogous to paying on an instrument with forged or unauthorized endorsements."). In both cases, a person not entitled to enforce the checks has obtained payment, improperly, from the bank and the checks will have been processed through the banking system and returned to the drawer.

The mechanism for enforcing the drawer's liability on the instrument is explained in comment 4 to section 3.310: "In the latter case [suit against the drawer under section 3.309], the drawer's obligation under Section 3-414(b) is triggered by dishonor which occurs because the check is unpaid. Presentment for payment to the drawee is excused under Section 3-504(a)(i) and, under Section 3-502(e), dishonor occurs without presentment if the check is not paid." *Id.* "The payee cannot merely ignore the instrument and sue the drawer on the underlying contract. This would impose on the drawer the risk that the check when stolen was indorsed in blank or to bearer." *Id.*

The drawer's liability is described by the sections cited in comment 4. The drawer is

obligated to pay a draft according to its terms at the time it was issued if the draft is dishonored. *Id.* § 3.414(b). The unpaid payee in this situation cannot with reasonable diligence present the draft because it has been processed and paid, albeit improperly, to the forger. *See id.* § 3.504(a)(1). Therefore, presentment is excused. *Id.* When presentment is excused, dishonor occurs without presentment if the instrument is not duly accepted or paid. *Id.* § 3.502(e).

Allied contends the checks were not dishonored because ViewPoint admitted in its appellant's brief the checks were "not dishonored; they were paid, albeit improperly, to Optimum." It appears ViewPoint used the term to indicate the banks improperly paid the checks rather than return them. In its reply brief, ViewPoint explains that counsel misspoke by using the technical term dishonor in an imprecise manner. In any event, the misuse of the term does not change the legal effect of the undisputed facts in this case. The checks may have been paid, but they were not properly paid. *See* TEX. BUS. & COM. CODE ANN. § 3.602(a); *McAllen Hosps.*, 2014 WL 1998245, at *3–4, 6. As a result, the checks were dishonored under section 3.502(e) because they were not properly paid and presentment was excused under section 3.504(a)(i). *See* TEX. BUS. & COM. CODE ANN. § 3.310 cmt. 4.

Allied argues this analysis ignores specific language of section 3.309(a)(3) and renders that language surplusage. We disagree. The language of section 3.309(a)(3) is not rendered surplusage because that provision applies in situations where the instrument is in the possession of an unknown person or person who cannot be served. But in the situation presented here, where the checks were improperly paid and returned to the drawer, comment 4 to section 3.310 explains how the cause of action against the drawer under section 3.309 may be enforced. *Id.* § 3.310 cmt. 4.

We consider the statute as a whole rather than focusing upon individual provisions in isolation. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *In re*

*Curry*, 407 S.W.3d 376, 379 (Tex. App.—Dallas 2013, orig. proceeding). As discussed above, several sections in article 3 explain the drawer's liability on an instrument and how it may be enforced under the code. *See* TEX. BUS. & COM. CODE ANN. § 3.310 cmt. 4. Allied's reading of the last clause of section 3.309(a)(3) in isolation ignores the comprehensive scheme established by the UCC and the official comments which "provide valuable guidance to the meaning and purpose of the Code as enacted in Texas." *Morgan Bldgs. & Spas, Inc. v. Turn–Key Leasing, Ltd.*, 97 S.W.3d 871, 880 (Tex. App.—Dallas 2003, pet. denied); *see also Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 239–40 (Tex. App.—Dallas 2011, pet. denied) (rejecting argument that lender was not a holder because it did not possess the note as overly technical and placing undue weight on physical possession where lender mistakenly returned unpaid promissory note to borrower).

Moreover, Allied's argument leads to the absurd result that the drawer is not discharged from liability on either the underlying obligation or the checks, but the payee cannot enforce either liability because the underlying obligation is suspended under section 3.310 and the payee cannot sue on the checks under Allied's limited reading of section 3.309(a)(3). *McAllen Hospitals* makes clear the drawer is not discharged by the improper payment to a joint payee without a necessary endorsement. *McAllen Hosps.*, 2014 WL 1998245, at *4–5. Thus, we conclude the payee may sue the drawer under section 3.309 to enforce the drawer's obligation on the instrument.

This conclusion is consistent with jurisdictions that have addressed the issue. The UCC must be "liberally construed and applied to promote its underlying purposes and policies." TEX. BUS. & COM. CODE ANN. § 1.103(a). Those underlying purposes and policies are: "(1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the

parties; and (3) *to make uniform the law among the various jurisdictions.*" *Id.* § 1.103(a) (emphasis added); *see also* TEX. GOV'T CODE ANN. § 311.028 ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it."); *Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 110 (Tex. 2004).

In *McAllen Hospitals*, the Texas Supreme Court chose to follow jurisdictions concluding the drawer is not discharged where a check payable to nonalternative copayees is paid without a necessary endorsement. *McAllen Hosps.*, 2014 WL 1998245, at *4 (citing *State ex rel. N.D. Housing*, 720 N.W.2d at 429–30; *GMAC*, 602 N.E.2d at 1088; *Crystaplex*, 92 Cal.Rptr.2d at 203–04). Those jurisdictions also recognize the unpaid payee may enforce the checks against the drawer under section 3.309. *See State ex rel. N.D. Housing*, 720 N.W.2d at 431 ("Applying the rationale of *GMAC* and *Crystaplex*, we conclude Center Mutual is liable to NDHFA on the instrument."); *GMAC*, 602 N.E.2d at 1088–89 (under prior UCC); *Crystaplex*, 92 Cal.Rptr.2d at 204 ("We therefore conclude that Crystaplex has alleged a cause of action for recovery of the amount of the check from the drawer of the check, defendant Redevelopment Agency. The Redevelopment Agency may proceed to recover its loss from the subcontractor that apparently forged the endorsement on the check, or against the bank that honored the forged check."); *see also Impac Funding Corp. v. Amica Mut. Ins. Co.*, No. 1:12-CV-873-RWS, 2013 WL 1136860, at *6–7 (N.D. Ga. Mar. 18, 2013).

We follow these jurisdictions and construe the UCC to allow enforcement of the drawer's liability on the instruments where the instruments have improperly been paid on a missing endorsement. To hold otherwise "would result in 'no assurance that all the joint payees would receive payment' and would dissolve any distinction between drafts made out to alternative copayees and drafts made out to nonalternative copayees." *McAllen Hosps.*, 2014 WL 1998245, at *4 (quoting *GMAC*, 602 N.E.2d at 1088).

Allied cites two federal district court opinions which held on similar facts that a payee could not hold the drawer liable on either the underlying obligation or the instruments under section 3.309. *See Bank of Am. Nat. Trust & Sav. Ass'n v. Allstate Ins. Co.*, 29 F. Supp. 2d 1129, 1144–45 (C.D. Cal. 1998); *Ne. Bank v. Wells Fargo Bank, N.A.*, No. CIV. 11-3233 JNE/JJG, 2012 WL 2721635 at *3–4 (D. Minn. July 9, 2012). The Texas Supreme Court rejected both conclusions in *McAllen Hospitals* and held the drawer was not discharged from "either his liability on the instrument or the underlying obligation." *McAllen Hosps.*, 2014 WL 1998245, at *6. We decline to follow *Bank of America* or *Northeast Bank*.

We also conclude Allied is adequately protected against additional claims on the checks. *See* TEX. BUS. & COM. CODE ANN. § 3.309(b). Allied is in possession of the checks and is in no danger of them falling into the hands of a holder in due course. Thus, Allied is adequately protected against loss from a claim by another person to enforce the checks. Furthermore, Allied has remedies against the banks that paid the checks without the necessary endorsement. *See McAllen Hosps.*, 2014 WL 1998245, at *5 n.6 (drawee bank may not charge its customer's account on an instrument that is not properly authorized); *State ex rel. N.D. Housing*, 720 N.W.2d at 431–32 (drawer has right to demand reimbursement for improperly paid check from drawee bank); *GMAC*, 602 N.E.2d at 1089 (drawer may bring conversion suit against drawee bank for payment of the check on a missing endorsement); *Crystaplex*, 92 Cal. Rptr. 2d at 202–03 (payee may maintain action against drawer leaving drawer to cross-complain against any or all of the other banks involved in check cashing process). "The Uniform Commercial Code envisions this remedy, rather than requiring the innocent loss payee whose endorsement was forged to directly sue the forger or the depositary bank." *State ex rel. N.D. Housing*, 720 N.W.2d at 432.

Under the undisputed facts in this case, we conclude Allied is obligated to pay the checks

to ViewPoint under the provisions of article 3 of the UCC. Accordingly, the trial court erred by denying ViewPoint's cross-motion for summary judgment.

## C. Attorney's Fees and Interest

ViewPoint requested an award of its reasonable and necessary attorney's fees under chapter 38 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001–.006; *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 392 (Tex. 2011) (claim on check is a contract claim under TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8)).

The affidavit of ViewPoint's attorney presents the opinion that a lump sum amount is a reasonable and necessary fee for ViewPoint's claims against Allied. The affidavit describes the attorney's experience, recites the factors described in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), and states the attorney considered those factors. The affidavit gives a brief description of the kinds of work done, then the opinion that $89,000 is a reasonable and customary fee through the filing of the motion for summary judgment, and additional amounts for fees in case of appeal. However, the affidavit does not state the hourly rates of the attorneys performing the services or the number of hours worked by those attorneys. Allied did not challenge the affidavit or present evidence contradicting the amount of attorney's fees stated in the affidavit.

It is not necessary that the record include evidence on each of the *Arthur Andersen* factors. *See Brockie v. Webb*, 244 S.W.3d 905, 909–10 (Tex. App.—Dallas 2008, pet. denied). While documentary evidence is not a prerequisite to an award of attorney's fees, the claimant must present evidence to support a finding that the amount of the fee is reasonable. *See In re A.B.P.*, 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, no pet.) (documentary evidence not a prerequisite to award of attorney's fees).

–15–

Generally, the nature and extent of the attorney's services are expressed by the number of hours worked and the hourly rate. *Brockie*, 244 S.W.3d at 909. However, there is no rigid requirement that both facts be introduced into evidence to support a finding attorney's fees are necessary and reasonable. *Id*; *Hays & Martin, L.L.P. v. Ubinas–Brache, M.D.*, 192 S.W.3d 631, 636 (Tex. App.—Dallas 2006, pet. denied). In *Hays & Martin*, this Court affirmed an award of attorney's fees where the evidence did not include evidence of the number of hours spent working on the case. *Hays & Martin L.L.P.*, 192 S.W.3d at 637. But the attorney in that case testified to the hourly rates of the attorneys working on the case and the complexity of the case. *Id.* Where a court has the total fee and either the hourly rates or the time necessary for the legal tasks, it can easily calculate the missing term in determining the reasonableness of the fee. *See Hagedorn v. Tisdale*, 73 S.W.3d 341, 353–54 (Tex. App.—Amarillo 2002, no pet.) (while court did not have total number of hours spent on case by each lawyer, it had means to determine approximate number of hours spent based on testimony as to the total fees and hourly rates of each person who worked on case).

The affidavit of a party's attorney regarding reasonable attorney's fees is expert testimony that will support an award of attorney's fees in a summary judgment proceeding. *Ellis v. Renaissance on Turtle Creek Condo. Ass'n, Inc.*, 426 S.W.3d 843, 857 (Tex. App.—Dallas 2014, pet. filed). And testimony from an interested witness that "is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (quoting *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam)). This is especially true where the opposing party had the means and opportunity to disprove the testimony but failed to do so. *Id.*; *see also Garcia v. Gomez*, 319 S.W.3d 638, 641

–16–

(Tex. 2010) ("The attorney's testimony is not objectionable as merely conclusory because the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee.").

Here, while the affidavit gives a general description of the services performed, such as conferring with the client, drafting pleadings, preparing and responding to discovery, researching the applicable law, and preparing and responding to motions for summary judgment, it does not state the number of hours expended or the hourly rates charged for the services. Thus, we have only the total amount of the fee and no way to determine whether the time spent on specific tasks was reasonable or the hourly rates charged were reasonable. Nor does the affidavit indicate the fee was determined on some alternative billing arrangement, such as a flat-fee or percentage of recovery, or whether that arrangement would be reasonable in this type of case.

In *Brockie*, this Court held the evidence was factually insufficient to support the amount of reasonable and necessary attorney's fees incurred in defending a counterclaim because there was no evidence of the number of hours expended, the hourly rates charged, or the specific services performed. *Brockie*, 244 S.W.3d at 911. The only evidence regarding the fees for defending the counterclaim was a lump sum amount on another attorney's bill to the client and that attorney's testimony that the fees were reasonable and necessary. *Id.*

Furthermore, uncontradicted testimony does not mandate an award of the amount claimed in all cases. *See Smith*, 296 S.W.3d at 547–48; *Ragsdale*, 801 S.W.2d at 882. "[T]he fee, though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained, and in the absence of evidence that such fees were warranted due circumstances unique to this case." *Smith*, 296 S.W.3d at 548.

The affidavit in this case, even though not controverted, is not clear about the method

–17–

used to determine the amount of attorney's fees. The supreme court has cautioned that in many cases generalities about an attorney's services may not be sufficient to support a finding of the amount of reasonable and necessary attorney's fees. *See Long v. Griffin*, No. 11-1021, 2014 WL 1643271, at *2–3 (Tex. Apr. 25, 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012); *see also In re Marriage of Pyrtle*, 433 S.W.3d 152, 167 (Tex. App.—Dallas 2014, no. pet. h.) (concluding evidence was insufficient to support attorney's fees where record did "not show the reasonableness of the hourly rate stated by [client], the 'performance of specific tasks,' the 'time required for those tasks,' or the 'person who performed the work'") (quoting *El Apple*, 370 S.W.3d at 765, 763).

We conclude the summary judgment evidence fails to establish as a matter of law the amount of reasonable and necessary attorney's fees ViewPoint is entitled to recover. Accordingly, we cannot render judgment for attorney's fees and must remand the claim for attorney's fees to the trial court. *See Long*, No. 11-1021, 2014 WL 1643271, at *3; *Montano*, 414 S.W.3d at 736–37; *El Apple*, 370 S.W.3d at 764.

ViewPoint requested an award of prejudgment interest in its cross-motion for summary judgment. However, the record does not contain the information necessary to determine the amount of prejudgment interest due on the check claim. *See Long v. Castle Texas Prod. Ltd. P'ship*, 426 S.W.3d 73, 77 (Tex. 2014); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998) (prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed).

ViewPoint failed to establish the amounts of reasonable and necessary attorney's fees or prejudgment interest to which it is entitled. Thus, it is not entitled to summary judgment for these amounts.

**CONCLUSION**

We conclude the trial court erred by granting Allied's motion for summary judgment and denying ViewPoint's cross-motion. We sustain ViewPoint's issues in part and deny them in part. We reverse the trial court's judgment, render judgment ViewPoint recover the total amount of the checks from Allied, and remand this cause to the trial court for determination of the amount of reasonable and necessary attorney's fees and pre- and post-judgment interest pursuant to Chapter 304 of the Finance Code.


/Jim Moseley/
JIM MOSELEY
JUSTICE

121370F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

VIEWPOINT BANK, Appellant

No. 05-12-01370-CV          V.

ALLIED PROPERTY AND CASUALTY
INSURANCE COMPANY, Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-03472-2012.
Opinion delivered by Justice Moseley.
Justices Francis and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellant VIEWPOINT BANK have judgment against and recover from appellee ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY the total amount of $341,290.40.

This cause is **REMANDED** to the trial court for determination of the amount of reasonable and necessary attorney's fees and pre- and post-judgment interest pursuant to Chapter 304 of the Finance Code.

It is **ORDERED** that appellant VIEWPOINT BANK recover its costs of this appeal from appellee ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY.

Judgment entered this 7th day of August, 2014.