FILED
14-0727
1/5/2015 3:43:34 PM
tex-3653833
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 14-0727

_____

IN THE SUPREME COURT OF TEXAS
_____

**ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,**

**Petitioner,**


**vs.**

**VIEWPOINT BANK,**

**Respondent.**


_____

On Petition for Review from the
Fifth District Court of Appeals, Dallas, Texas
Court of Appeals No. 05-12-01370-CV

_____

**RESPONSE TO PETITION FOR REVIEW**

_____


James M. McCown
jmccown@nvmlaw.com
State Bar No. 00788002
NESBITT, VASSAR & McCOWN, L.L.P.
15851 Dallas Parkway, Suite 800
Addison, Texas 75001
(972) 371-2411
(972) 371-2410 – Telecopier

ATTORNEYS FOR RESPONDENT

# TABLE OF CONTENTS

RESPONSE TO ISSUES PRESENTED ...........................................................................2

SUMMARY OF ARGUMENT AND RESPONSE TO ALLIED'S INTRODUCTION...................................................................................................2

ARGUMENT ............................................................................................................4

I. UCC Article 3's Comprehensive Scheme Requires Allied's Liability.........4

II. UCC Sections 3.309 and 3.310 Govern Allied's Liability as a Drawer. ......5

   A. The court of appeals did not err in applying UCC Section 3.310. ................5

   B. The court of appeals did not err in applying UCC Section 3.309. ................7

   C. The court of appeals correctly considered Comment 4 to UCC Section 3.310.............................................................................................................10

III. This Court Adopted Cases that Appropriately Analyze UCC Article 3 and Section 3.309.............................................................................................12

IV. UCC Article 3 Governs this Appeal Regardless of McAllen Hospitals' Retroactivity. ..............................................................................................14

V. Rule 56.1 Does not Merit the Review of this Case....................................17

PRAYER ................................................................................................................18

CERTIFICATE OF SERVICE ................................................................................19

# TABLE OF AUTHORITIES

## Federal Cases

Bank of Am. Nat'l Trust & Sav. Ass'n v. Allstate Ins. Co., 29 F. Supp. 2d 1129 (C.D. Cal. 1998) .................................................................................... 12, 13, 14

Boyle v. United States, 395 F.2d 413 (9th Cir. 1968) ..............................................8

Northeast Bank v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 93966 (D. Minn. 2012) .................................................................................. 12, 13, 14

Southeast Invs., Inc. v. Clade, 1999 U.S. Dist. LEXIS 10844 (N.D. Tex. 1999) .....7

Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V., 2011 U.S. Dist. LEXIS 72989 (E.D. Mich., July 7, 2011).................................................................9

## State Cases

1/2 Price Checks Cashed v. United Auto. Ins. Co., 344 S.W.3d 378 (Tex. 2011)....5

Benchmark Bank v. State Farm Lloyds, 893 S.W.2d 649 (Tex. App.--Dallas 1994, no writ)................................................................................................ 14, 16

Bowen v. Aetna Casualty & Surety Co., 837 S.W.2d 99 (Tex. 1992) ....................16

Crystaplex Plastics, Ltd. v. Redevelopment Agency, 92 Cal. Rptr. 2d 197 (Cal. App. 2000) .................................................................................................7, 14

Fetter v. Wells Fargo Bank Tex., N.A., 110 S.W.3d 683 (Tex. App.--Houston [14th Dist.] 2003, no pet.).................................................................................11

General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 602 N.E.2d 1085 (Mass. 1992) ...............................................................................................14

Hutzler v. Hertz Corp., 347 N.E.2d 627 (N.Y. 1976)............................................15

McAllen Hosps., L.P. v. State Farm County Mut. Ins. Co., 433 S.W.3d 535 (Tex. 2014) ............................................................................................... passim

Parkway Bank & Trust Co. v. State Farm Fire & Cas. Co., 990 N.E.2d 1202 (Ill. App. Ct. 2013), appeal denied, 996 N.E.2d 16 (Ill. 2013). ........................... 12, 14

State ex rel. N.D. Hous. Fin. Agency v. Center Mut. Ins. Co., 720 N.W.2d 425
(N.D. 2006) ...........................................................................................................14

ViewPoint Bank v. Allied Prop. & Cas. Ins. Co., 439 S.W.3d 626 (Tex. App.--
Dallas 2014, pet. filed) ................................................................... passim

**Statutes**

12 U.S.C. § 5001 .....................................................................................................8

TEX. BUS. & COM. CODE § 3.110 ........................................................................4, 16

TEX. BUS. & COM. CODE § 3.301 .............................................................................4

TEX. BUS. & COM. CODE § 3.309 ..................................................................... passim

TEX. BUS. & COM. CODE § 3.310 ..................................................................... passim

TEX. BUS. & COM. CODE §  3.409(a), ......................................................................4

TEX. BUS. & COM. CODE § 3.414(b) ....................................................... 4, 6, 10, 16

TEX. BUS. & COM. CODE § 3.502(e) ....................................................................4, 16

TEX. BUS. & COM. CODE § 3.504(a)(1) ........................................................ 7, 12, 16

TEX. BUS. & COM. CODE § 3.602(a) ....................................................................4, 16

TEX. BUS. & COM. CODE § 3.802 (deleted by Acts of June 16, 1995, 74th Leg., R.S.,
ch. 921, § 1) ......................................................................................................15

TEX. BUS. & COM. CODE § 4.105 .............................................................................8

TEX. BUS. & COM. CODE § 4.204 .............................................................................8

TEX. BUS. & COM. CODE § 4.206 .............................................................................8

TEX. BUS. & COM. CODE § 4.214 .............................................................................8

TEX. BUS. & COM. CODE § 4.215 ........................................................................8, 12

TEX. BUS. & COM. CODE § 4.406(b) ....................................................................8, 9

## Other Authorities

6B R. Anderson, <u>Anderson on the Uniform Commercial Code</u> § 3-309:13R (3d ed. 2003) ..................................................................................................................8

28 WILLISTON ON CONTRACTS § 72:36 (4th ed. 2003) ...........................................14

TEX. R. APP. P. 56.1 ................................................................................. 17, 18

TEX. R. APP. P. 53.3 ...................................................................................1

No. 14-0727

_____

IN THE SUPREME COURT OF TEXAS
_____

**ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,**

**Petitioner,**


**vs.**

**VIEWPOINT BANK,**

**Respondent.**

_____

On Petition for Review from the
Fifth District Court of Appeals, Dallas, Texas
Court of Appeals No. 05-12-01370-CV

_____

**RESPONSE TO PETITION FOR REVIEW**
_____

TO THE HONORABLE SUPREME COURT OF TEXAS:

Respondent ViewPoint Bank ("ViewPoint") responds to Petitioner Allied
Property and Casualty Insurance Company's ("Allied") Petition for Review pursuant
to Texas Rule of Appellate Procedure 53.3.

## RESPONSE TO ISSUES PRESENTED

Allied's issues do not reflect the topics necessary to resolve Allied's Petition. In response to Allied's first and second issues presented, the issue is:

1.      Whether the court of appeals erred in holding Allied liable as drawer of the checks under UCC Article 3?

In response to Allied's third issue presented, the issue is:

2.      Whether UCC Article 3 governs Allied's liability as drawer of the checks?

## SUMMARY OF ARGUMENT AND
## RESPONSE TO ALLIED'S INTRODUCTION

The court of appeals correctly held Allied liable under UCC Article 3 as a drawer of ten insurance settlement checks.  Allied agrees that Article 3 does not discharge its liability to ViewPoint as drawer of the checks because those checks were improperly paid.  This key and undisputed fact is dispositive, irrespective of Allied's arguments.  Because the checks were not properly paid, Allied is liable to ViewPoint as a matter of law under either UCC Subsection 3.310(b)(3) or (b)(4), regardless of the checks' existence or location.

The court of appeals properly found that Subsection 3.310(b)(4), when read with Section 3.309, is the appropriate option for Allied's liability because the checks were lost, stolen, or destroyed.  Allied contends that it escapes liability because the checks were cashed.  This is incorrect.  Cashed checks cannot be recovered, and are

therefore lost or destroyed, both factually and under the analysis UCC Article 3's comprehensive scheme requires. Even if the checks existed and could be located, Allied is, again, still liable to ViewPoint under Article 3 because the checks were improperly paid.

Allied embellishes its argument by characterizing the court of appeals' decision, and this Court's opinion in <u>McAllen Hosps., L.P. v. State Farm County Mut. Ins. Co.</u>, 433 S.W.3d 535 (Tex. 2014), as shocking departures from Texas law that create "strict liability" to insurers as drawers of settlement checks. Allied sounds a false alarm. Under Article 3, all drawers of checks, including insurance companies, are liable on their checks until the checks are properly paid. This result is not "unfair." As the court of appeals' decision and <u>McAllen Hosps.</u> recognize, the drawer has a remedy against its bank under Article 3 for paying a check with improper endorsements. The collecting bank that initially accepted the checks with the improper endorsements bears ultimate liability. A drawer's liability under Article 3's comprehensive scheme is not "unfair" and is not "strict liability."

Lastly, Allied mistakenly claims that limiting <u>McAllen Hosps.</u>' application absolves Allied from liability. It does not. <u>McAllen Hosps.</u> merely recognizes UCC Article 3's application; it does not create new law. Allied's liability hinges on Article 3, not on <u>McAllen Hosps.</u>' holding. Even if <u>McAllen Hosps.</u> is necessary for Allied's liability (and it is not), its holding applies retroactively.

UCC Article 3 permits only one result based on the undisputed facts of this case. Allied is liable to ViewPoint as drawer of the improperly paid checks. The court of appeals correctly decided that issue. Allied's request for the Court to review that decision does not have merit.

## ARGUMENT

**I.     UCC Article 3's Comprehensive Scheme Requires Allied's Liability.**

Allied is liable as drawer of the checks because the checks were improperly paid without the necessary endorsements. TEX. BUS. & COM. CODE §§ 3.110, 3.301, 3.309, 3.310, 3.414(b), 3.502(e), 3.602(a) [hereinafter, "TEX. UCC"]. A drawer is liable on its check if the check is dishonored, regardless of the circumstances. TEX. UCC § 3.414(b) and cmt. 2 ("The liability of the drawer of an unaccepted draft is treated as a primary liability."). A check is dishonored when it is not accepted or improperly paid. TEX. UCC § 3.502(e). Allied's checks were dishonored because they were not accepted, TEX. UCC § 3.409(a), and because they were improperly paid due to missing endorsements. TEX. UCC §§ 3.110(d), 3.602(a). Because the checks were dishonored, Allied is primarily liable as a drawer:

> Article 3 . . . establishes a comprehensive scheme governing the procedures, liabilities, and remedies pertaining to negotiable instruments, including checks. As part of that scheme, when a bank dishonors a check, the drawer of the check is obligated to pay the amount of the check to the check's holder according to its terms at the time it was issued. TEX. BUS. & COM. CODE § 3.414(b).

<u>1/2 Price Checks Cashed v. United Auto. Ins. Co.</u>, 344 S.W.3d 378, 380 (Tex. 2011) (citations omitted).

**II.     UCC Sections 3.309 and 3.310 Govern Allied's Liability as a Drawer.**

Allied concedes that Article 3 does not discharge its liability on the checks. (Petition at 8).    Allied nevertheless argues that it can avoid liability for the dishonored checks because ViewPoint does not have an "avenue to enforce the checks." <u>Id</u>.  UCC Sections 3.309 and 3.310 provide ViewPoint two "avenues" to enforce Allied's checks.  The court of appeals properly found that those sections delineate the mechanics for Allied's liability.

**A.     The court of appeals did not err in applying UCC Section 3.310.**

With respect to Allied's uncertified checks, subsection 3.310(b) lists three rules to determine whether Allied is liable on the underlying obligation, or the checks, or both.[1]  If the checks are properly paid, the obligation or debt is discharged. TEX. UCC § 3.310(b)(1).    If the checks are dishonored, i.e. improperly paid, ViewPoint can sue on the underlying debt, or on the checks.    TEX. UCC § 3.310(b)(3).  Subsection 3.310(b)(3) is expressly subject to Subsection 3.310(b)(4). Under that provision, if the checks are lost, stolen, or destroyed, ViewPoint cannot sue on the underlying debt, but it has a claim on the checks against Allied.  TEX. UCC § 3.310(b)(4).

---

[1]      A fourth option relates to a note, which we do not have here.  TEX. UCC § 3.310(b)(2).

Allied's checks were dishonored, leaving ViewPoint with one of two remedies against Allied.  See TEX. UCC § 3.414(b).  Subsection 3.310(b)(3) allows ViewPoint to enforce the checks or the underlying debt against Allied, subject to Subsection 3.310(b)(4).  If ViewPoint does not possess the checks because they were lost, stolen, or destroyed, Subsection 3.310(b)(4) allows ViewPoint to enforce the checks against Allied.  Thus, regardless of whether the checks can be found or obtained, Allied is liable to ViewPoint as a drawer under one of the two subsections in 3.310 because the checks were dishonored.  TEX. UCC § 3.310(b)(3) & (4).

Allied argues that neither of these provisions applies.  The court of appeals properly rejected Allied's theory:

> Allied's argument leads to the absurd result that the drawer is not discharged from liability on either the underlying obligation or the checks, but the payee cannot enforce either liability because the underlying obligation is suspended under section 3.310 and the payee cannot sue on the checks under Allied's limited reading of section 3.309(a)(3).

ViewPoint Bank v. Allied Prop. & Cas. Ins. Co., 439 S.W.3d 626, 635 (Tex. App.--Dallas 2014, pet. filed).  The court of appeals correctly held Allied liable under the second of the applicable options here, Subsection 3.310(b)(4), because the checks were lost, stolen, or destroyed.  ViewPoint Bank, 439 S.W.3d at 632 ("This case involves the last situation [under 3.310(b)] because ViewPoint, although it once had constructive possession, no longer has possession of the checks.").  Subsection 3.310(b)(4) directly connects Allied's liability as a drawer of the checks to UCC

Section 3.309. TEX. UCC § 3.310, cmt. 4 ("The payee's cause of action is against . . . the drawer under Section 3-309.").

**B.     The court of appeals did not err in applying UCC Section 3.309.**

Allied contends that ViewPoint does not meet UCC Section 3.309's third element, i.e. that ViewPoint cannot reasonably obtain possession of the checks because the checks are lost or destroyed. (Petition at 10); TEX. UCC § 3.309(a)(3). The court of appeals properly found that ViewPoint met this criteria because it could not obtain the checks and present them for payment. ViewPoint Bank, 439 S.W.3d at 634 ("The unpaid payee in this situation cannot with reasonable diligence present the draft because it has been processed and paid, albeit improperly, to the forger.") (citing TEX. UCC § 3.504(a)(1)).

"Under Tex. Bus. & Comm. Code § 3.309, a person who is not in possession of an instrument may enforce the instrument if: . . . (3) the person cannot reasonably obtain possession of the instrument." Southeast Invs., Inc. v. Clade, 1999 U.S. Dist. LEXIS 10844, *7 (N.D. Tex. 1999); see also Crystaplex Plastics, Ltd. v. Redevelopment Agency, 92 Cal. Rptr. 2d 197, 204 (Cal. App. 2000) ("The third requirement of section 3309 is that the person cannot reasonably obtain possession of the instrument.").

> It is sufficient that the plaintiff "cannot reasonably obtain possession."
> That is, the Code does not impose the standard of absolute impossibility
> to produce the instrument, although, in cases of a physical destruction,
> such a standard is satisfied.

6B R. Anderson, <u>Anderson on the Uniform Commercial Code</u> § 3-309:13R, p. 400 (3d ed. 2003).

The undisputed facts here conform to Subsection 3.309(a)(3). ViewPoint lost possession of the checks when the insured misappropriated them. (Petition at 4). There is no dispute that the checks were "lost, destroyed, or stolen." <u>See</u> TEX. UCC § 3.310(b)(4). ViewPoint could not obtain possession of the "stolen" checks because the insured cashed the checks. (Petition at 4). By doing so, the insured relinquished the checks to its bank, and ultimately to Allied's bank through the bank collection process. <u>See</u> TEX. UCC §§ 4.105(3), 4.204, 4.206. If the checks still exist[2], they are canceled, and either Allied or its bank has them. <u>See</u>, <u>e.g.</u>, TEX. UCC § 4.406(b); <u>Boyle v. United States</u>, 395 F.2d 413, 416 (9th Cir. 1968) ("the checks, once paid and canceled, became nothing more than records belonging exclusively to the maker to whom they had been returned."). It is undisputed that ViewPoint could not obtain possession of the original checks from Allied. (CR 370-404). Even if ViewPoint could obtain the canceled checks, it could not present them for payment because Allied's bank already funded the checks through final settlement. <u>See</u> TEX. UCC §§ 4.214, 4.215.

---

[2]    Checks are usually collected electronically. The check is "truncated," i.e. imaged, and sent for collection. 12 U.S.C. § 5002(18). This process, under the Check Clearing for the 21st Century Act, typically results in destruction of the hard check, as the Federal Reserve explains. 12 U.S.C. § 5001; http://www.federalreserve.gov/paymentsystems/regcc-faq-check21.htm#16.

The court of appeals therefore correctly held that ViewPoint's inability to obtain possession of the checks meets at least one of Subsection 3.309(a)(3)'s criteria. ViewPoint Bank, 439 S.W.3d at 633 ("It is undisputed the checks were processed through the banking system and are now in Allied's possession.)" Allied assumes that the checks were not lost or destroyed because the insured cashed them. (Petition at 10). This argument proves Allied's liability under Subsection 3.309. The insured initially stole the checks, triggering Subsection 3.310(b)(4), and then caused the checks to be lost or destroyed under Subsection 3.309(a)(3) by cashing them. See TEX. UCC § 4.406(b).

Allied infers that copies of the checks disprove Section 3.309(a)(3). (Petition at 10). This too is inaccurate. Check copies legally differ from original checks and they cannot be presented for payment. See Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V., 2011 U.S. Dist. LEXIS 72989, *11 (E.D. Mich., July 7, 2011). Allied's production of copies of the checks, rather than the original checks, also establishes Subsection 3.309(a)(3)'s requisites. (CR 370-404).

Separately, Allied's singular focus on whether the checks were lost, stolen or destroyed under Subsection 3.309(a)(3) suffers from a fatal flaw. See ViewPoint Bank, 439 S.W.3d at 634 ("Allied's reading of the last clause of section 3.309(a)(3) in isolation ignores the comprehensive scheme established by the UCC and the official comments"). If the checks were not lost, stolen, or destroyed, such that

ViewPoint could obtain them and Section 3.309 did not apply, Allied is still liable to ViewPoint on the underlying obligation or the checks under Subsection 3.310(b)(3):

> Except as provided in Subdivision (4), if the check or note is dishonored and the obligee of the obligation for which the instrument was taken is the person entitled to enforce the instrument, the obligee may enforce either the instrument or the obligation.

TEX. UCC § 3.310(b)(3). See also TEX. UCC § 3.414(b). No matter Allied's theory, it is liable to ViewPoint under Article 3's comprehensive scheme because, as Allied admits, its checks were improperly paid. Subsection 3.309 is the appropriate method for recovery because the checks were cashed and no longer exist. ViewPoint Bank, 439 S.W.3d at 633. The court of appeals did not err in holding Allied liable because the checks were lost, stolen or destroyed. TEX. UCC §§ 3.309(a)(3), 3.310(b)(3).

### C. The court of appeals correctly considered Comment 4 to UCC Section 3.310.

The UCC's official comment 4 to Section 3.310 determines Allied's liability under a hypothetical that is virtually identical to the facts here. Allied attempts to distinguish this comment by claiming that it "does not address the enforcement mechanism or remedy available" under Section 3.309. (Petition at 11). A cursory reading of Comment 4 reveals that it does identify the specific "mechanism and remedy available," i.e. Section 3.309.

The UCC and its interpretive comments must be read consistently. See Fetter

<u>v. Wells Fargo Bank Tex., N.A.</u>, 110 S.W.3d 683, 687 (Tex. App.**--**Houston [14th Dist.] 2003, no pet.).  Comment 4's  plain language identifies Allied's liability under UCC Section 3.309.  The drawer is not discharged when a check is improperly paid because of an improper endorsement.  TEX. UCC § 3.310, cmt. 4.  The comment further explains the drawer's liability under UCC Section 3.309:

> There was uncertainty concerning  . . . the case in which the check given for the obligation was stolen from the payee, the payee's signature was forged, and the forger obtained payment.  The last sentence of subsection (b)(4) addresses this issue. . . . If the payor bank pays a person not entitled to enforce the instrument, as in the hypothetical case, the suspension of the underlying obligation continues because the check has not been paid.  Section 3-602(a).  The payee's cause of action is against the depository bank or payor bank in conversion under Section 3-420 <u>or against the drawer under Section 3-309</u>.  In the latter case, the drawer's obligation under section 3-414(b) is triggered by dishonor which occurs because the check is unpaid.  Presentment for payment to the drawee is excused under section 3-504(a)(i) and, under section 3-502(e), dishonor occurs without presentment if the check is not paid. The payee cannot merely ignore the instrument and sue the drawer on the underlying contract. This would impose on the drawer the risk that the check when stolen was indorsed in blank or to bearer.

TEX. UCC § 3.310, cmt. 4 (emphasis added).  Contrary to Allied's interpretation, comment 4 goes beyond the mere suspension of an underlying debt.  It includes a statutory analysis of the drawer's liability on the check under Sections 3.309, 3.414(b), 3.502(e) and 3.504(a)(i).  The court of appeals properly found that this "case is analogous to the hypothetical described in comment 4," and properly found

that Comment 4 explained the "mechanism for enforcing [Allied's] liability on the instrument" under UCC Section 3.309. ViewPoint Bank, 439 S.W.3d at 633.

### III. This Court Adopted Cases that Appropriately Analyze UCC Article 3 and Section 3.309.

Allied urges the Court to ignore Article 3's scheme, and overturn McAllen Hosps., by following three cases that have reached opposite results. (Petition at 14). Northeast Bank v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 93966 (D. Minn. 2012); Bank of Am. Nat'l Trust & Sav. Ass'n v. Allstate Ins. Co., 29 F. Supp. 2d 1129 (C.D. Cal. 1998); Parkway Bank & Trust Co. v. State Farm Fire & Cas. Co., 990 N.E.2d 1202 (Ill. App. Ct. 2013), appeal denied, 996 N.E.2d 16 (Ill. 2013).

These three cases wrongfully assume, as does Allied, that the rightful payee can recover cashed checks and submit them for payment. Northeast Bank, 2012 U.S. Dist. LEXIS 93966 at *11; Bank of Am. Nat'l Trust & Sav. Ass'n, 29 F. Supp. 2d at 1145; Parkway Bank & Trust Co., 990 N.E.2d at 1207. As explained above, the rightful payee cannot obtain canceled checks and present them for payment. ViewPoint Bank, 439 S.W.3d at 633 ("a person not entitled to enforce the checks has obtained payment, improperly, from the bank and the checks will have been processed through the banking system and returned to the drawer"); TEX. UCC §§ 3.504, 4.215. UCC Article 4 prohibits the re-payment of checks in most circumstances after certain deadlines, which undoubtedly lapsed here. See TEX. UCC §§ 4.214, 4.215. And, these opinions fail to impose the drawer's liability under

UCC Section 3.310(b)(3), which holds the drawer of an improperly paid check liable on the underlying obligation or on the check if it is not lost, destroyed or stolen.

Some of these opinions also wrongfully infer, as does Allied, that Section 3.309(a)(3) is not met because the checks were cashed by a forger that "was known or could be served." (Petition at 17 and n. 3). The original forger's identity or location is relevant under Subsection 3.309(a) only if the forger still possesses the checks. The forger does not possess the checks here. ViewPoint could not obtain the checks from the insured, i.e. the "forger," whether it could be found or served, because the insured did not possess the checks. The insured cashed the checks, causing them to be canceled and either destroyed or sent to Allied's bank. Subsection 3.309(a)(3) is ViewPoint's avenue to recovery because it cannot obtain canceled checks and resubmit them for payment.

Allied's improper reading of 3.309(a)(3), and the erroneous holdings in Northeast Bank, Bank of Am. Nat'l Trust, and Parkway Bank & Trust Co., are contrary to Article 3's comprehensive scheme. As with Allied's argument, these cases improperly relieve a drawer from liability despite the absence of a discharge under Article 3. See ViewPoint Bank, 439 S.W.3d at 635 ("absurd result that the drawer is not discharged from liability on either the underlying obligation or the checks, but the payee cannot enforce either liability"). Far from committing error, the court of appeals recognized that Article 3 conflicts with the holdings in Northeast

Bank, Bank of Am. Nat'l Trust, and Parkway Bank & Trust Co. The court of appeals correctly followed other jurisdictions in reaching a decision that is true to Article 3:

> We follow these jurisdictions and construe the UCC to allow enforcement of the drawer's liability on the instruments where the instruments have improperly been paid on a missing endorsement. To hold otherwise "would result in 'no assurance that all the joint payees would receive payment' and would dissolve any distinction between drafts made out to alternative copayees and drafts made out to nonalternative copayees."

ViewPoint Bank, 439 S.W.3d at 635 (citing McAllen Hosps., 433 S.W.3d at 540 and General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 602 N.E.2d 1085, 1088 (Mass. 1992)). See also State ex rel. N.D. Hous. Fin. Agency v. Center Mut. Ins. Co., 720 N.W.2d 425, 431 (N.D. 2006); Crystaplex, 92 Cal. Rptr. 2d at 204.

## IV. UCC Article 3 Governs this Appeal Regardless of McAllen Hospitals' Retroactivity.

Allied urges the Court to limit McAllen Hosps.' application to breathe life into Benchmark Bank v. State Farm Lloyds, 893 S.W.2d 649 (Tex. App.--Dallas 1994, no writ). Benchmark Bank does not save Allied from Article 3 liability.

Benchmark Bank is at odds with revised UCC Article 3. See 28 WILLISTON ON CONTRACTS § 72:36 (4th ed. 2003). UCC drafters significantly rewrote Articles 3 and 4 in 1991, resulting in a "complete deletion of existing Chapter 3." Southwest Bank v. Info Support Concepts, Inc., 149 S.W.3d 104, at 105-106 (Tex. 2004). Texas adopted the revised UCC Article 3 in 1996, one year after Benchmark was decided. Id. The former UCC Section 3.802 was the relevant discharge provision

on which <u>Benchmark</u> relied. 893 S.W.2d at 651. Revised Article 3 deletes Section 3.802 and adopts new discharge criteria that changes <u>Benchmark's</u> result.

Former Section 3.802(a)(2) suspended an underlying obligation when a check was tendered on that obligation. Tex. Bus. & Com. Code § 3.802 (deleted by Acts of June 16, 1995, 74th Leg., R.S., ch. 921, § 1).[3] If the check was dishonored, the obligee could sue on the obligation or the check; if the check was paid, the obligor was discharged on both the check and the obligation. <u>Id</u>. There was no specific discharge language for lost, stolen or destroyed checks, leading to inconsistent results as to whether a check cashed over a forged endorsement was properly paid, thus discharging the obligor. <u>See</u>, e.g., <u>Hutzler v. Hertz Corp.</u>, 347 N.E.2d 627, 629 (N.Y. 1976) ("we note that the courts of other jurisdictions have divided on the question now before us and it seems as though no majority rule can be stated").

UCC Section 3.310 replaced the former Section 3.802, and establishes discharge rules based on discrete circumstances, including when a check is "lost, stolen, or destroyed." Tex. UCC § 3.310 (b)(4). Section 3.310(b)(4) was drafted to eliminate the confusion arising from payment over a forged endorsement, i.e. the very issue here and in <u>Benchmark</u>:

> There was uncertainty concerning the applicability of former Section 3-802 to the case in which the check given for the obligation was stolen

---

[3]      A copy of the former Section 3.802 is attached for the Court's reference.

<u>RESPONSE TO PETITION FOR REVIEW</u> – Page 15

from the payee, the payee's signature was forged, and the forger obtained payment.

TEX. UCC § 3.310, cmt. 4. Under this provision, and contrary to Benchmark, a co-payee's cashing of a stolen (or lost) check does not discharge the obligor. TEX. UCC § 3.310(b)(4). UCC Article 3, specifically Sections 3.110, 3.309, 3.310, 3.414, 3.502, 3.504, and 3.602, have governed a drawer's liability in Texas since 1996, not Benchmark Bank. Those same UCC provisions govern Allied's liability, not Benchmark Bank's outdated holding.

McAllen Hosps. did not overrule Benchmark Bank; UCC Article 3, overruled Benchmark Bank when Texas adopted the revised Article 3 in 1996. Because McAllen Hosps. did not establish a new legal precedent, its ruling applies retroactively. (Petition for Review at 18). For this same reason, none of the "Chevron Factors" on which Allied relies are applicable here. Id.

Even if McAllen Hosps. was necessary precedent to Allied's liability, it applies retroactively by its own terms. "A decision of the Supreme Court operates retroactively unless this Court exercises its discretion to modify that application." Bowen v. Aetna Casualty & Surety Co., 837 S.W.2d 99, 100 (Tex. 1992) (citations omitted). There is no reason to apply McAllen Hosps. prospectively. Correcting a Texas statute's interpretation does not justify the prospective application of a holding. See Bowen, 837 S.W.2d at 100. On the contrary, properly construing a Texas statute is grounds for the retroactive application of the decision. Id.; (Petition

at 19: The UCC's objective is "promoting certainty and predictability in commercial transactions.") (citation omitted). The court of appeals correctly applied UCC Article 3, and McAllen Hosps., to this case.

In short, eliminating McAllen Hosps. does not benefit Allied. Allied is subject to liability as a drawer of the checks under UCC Article 3's comprehensive scheme, with or without McAllen Hosps.' holding. ViewPoint Bank, 439 S.W.3d at 634 ("As discussed above, several sections in article 3 explain the drawer's liability on an instrument and how it may be enforced under the code.").

## V.      Rule 56.1 Does not Merit the Review of this Case.

Allied premises jurisdiction under four provisions of TEX. R. APP. P. 56.1, none of which apply here.

The Court does not have jurisdiction based a conflict among the courts of appeals. TEX. R. APP. P. 56.1(a)(2). There is no conflict among the Texas courts of appeal with respect to UCC Sections 3.309 and 3.310 (or any other Article 3 provision). Those UCC Sections (in their present form) did not exist at the time Benchmark Bank was decided. This Court, in McAllen Hosps., ensured that no conflict about Article 3 exists between Benchmark Bank and other Texas courts.

The Court does not have jurisdiction based on the construction of UCC Sections 3.309 and 3.310. TEX. R. APP. P. 56.1(a)(3). UCC Article 3, including Sections 3.309 and 3.310 must be construed according to their plain language. To

the extent any ambiguity exists in those provisions, the UCC's Official Comments resolve any statutory interpretation.

The Court does not have jurisdiction based on an error of law. TEX. R. APP. P. 56.1(a)(5). The court of appeals properly applied and followed UCC Article 3 in rendering its opinion. Insurance companies are subject to the same laws as other drawers when drafting checks.

Lastly, the Court does not have jurisdiction based on an issue of first impression. TEX. R. APP. P. 56.1(a)(6). The UCC and its comments precisely analyze Allied's liability in this case, including a specific hypothetical on the same facts. TEX. UCC § 3.310, cmt. 4. Allied's disagreement with that interpretation does not equal an unresolved legal issue that merits the Court's attention. ViewPoint Bank, 439 S.W.3d at 635 ("The UCC must be 'liberally construed and applied to promote its underlying purposes and policies' . . . including 'to make uniform the law among the various jurisdictions.'") (citing Tex. UCC § 1.103(a)).

## **PRAYER**

Respondent ViewPoint Bank respectfully requests that Petitioner's Petition for Review be in all things refused, or otherwise denied, and that ViewPoint be awarded all other relief to which it may be justly entitled.

Respectfully submitted,

NESBITT, VASSAR & McCOWN, L.L.P.
15851 Dallas Parkway, Suite 800
Addison, Texas 75001
(972) 371-2411
(972) 371-2410 – Telecopier


By:_____/s/ Jim McCown_____
    James M. McCown
    jmccown@nvmlaw.com
    State Bar No. 00788002

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

This is to certify that on this 5th day of January, 2015, a true and correct copy of the foregoing Response to Petition for Review was served by electronic mail on the following counsel of record:

Randall C. Owens
Wright & Close, LLP
One Riverway, Suite 2200
Houston, Texas 77056


_____/s/ Jim McCown_____
James M. McCown

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Response contains 4214 words, excluding the items identified by TEX. R. APP. P. 9.4(i)(1). The Response therefore complies with Rule 9.4(i)(2)(D).


_____/s/ Jim McCown_____
James M. McCown

## EXHIBIT 1

3.802. Effect of Instrument on Obligation for Which It Is Given

(a) Unless otherwise agreed where an instrument is taken for an underlying obligation

> (1) the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and

> (2) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.

(b) The taking in good faith of a check which is not postdated does not of itself so extend the time on the original obligation as to discharge a surety.

Biggs v. World Air Conditioning, Inc., 722 S.W.2d 27, 29 n. 3 (Tex. App.--Dallas 1986, writ ref'd n.r.e.).